## ROTH v ROTH

Docket No. 138031. Submitted March 3, 1993, at Lansing. Decided
     September 20, 1993, at 9:40 A.M.

> Gertrude A. Roth obtained a divorce from Irvin G. Roth in the
> Macomb Circuit Court, Kenneth N. Sanborn, J., on December
> 13, 1983. The plaintiff was awarded an interest in the defen-
> dant's defined benefit pension plan, which was fully vested, but
> she would not receive any benefits until the defendant received
> his. The plaintiff was not awarded survivorship rights. On
> August 17, 1990, the plaintiff filed a motion for entry of a
> qualified domestic relations order and for addition of preretire-
> ment and survivorship rights to her pension rights. The defen-
> dant died on October 23, 1990, before receiving any pension
> benefits. The court, Kenneth N. Sanborn, J., thereafter denied
> the motion, finding no valid reason to amend the judgment of
> divorce and that the Retirement Equity Act of 1984, PL 98-397,
> 98 Stat 1433, which specifically requires retirement plans to
> provide a divorced spouse preretirement and postretirement
> survivorship benefits if ordered by a court, does not apply
> retroactively. The plaintiff's motion for rehearing was denied,
> George E. Montgomery, J. The plaintiff appealed.
>
> The Court of Appeals held:
>
> 1. There are no extraordinary circumstances warranting
> modification of the judgment of divorce. Given the state of the
> law and the language of the pension plan in 1983, the plaintiff
> knew that a former spouse could not acquire survivorship
> rights in the defendant's pension, and the parties did not
> intend the plaintiff to have survivorship rights.
>
> 2. Even if extraordinary circumstances did exist warranting
> modification of the judgment of divorce, the plaintiff's motion
> for entry of the qualified domestic relations order was not filed
> within the reasonable time requirement of MCR 2.612(C)(2).
> The plaintiff's delay of five years after the Retirement Equity
> Act of 1984 became applicable before seeking modification of
> the judgment was unreasonable.
>
> 3. Because no grounds exist warranting modification of the
> judgment of divorce, the plaintiff was not entitled to entry of a

qualified domestic relations order that provides her with survivorship rights in the defendant's pension plan.

4. Denial of the motion for rehearing was proper. The trial court was aware before its ruling that defense counsel had misrepresented to the court that the defendant had remarried.

Affirmed.

*Serra & Isopi, P.C.* (by *Susan Isopi*), for the plaintiff.

Before: MICHAEL J. KELLY, P.J., and MARILYN KELLY and CONNOR, JJ.

MARILYN KELLY, J. This case addresses the question whether a person divorced before 1985 can be awarded direct survivorship benefits in a former spouse's vested pension plan absent provision in the original judgment. Plaintiff appeals from a Macomb Circuit Court order denying her motion for a qualified domestic relations order (QDRO) containing survivorship benefits and for modification of her judgment of divorce. On appeal, plaintiff argues that the court erred in failing to amend the divorce judgment and in refusing to enter the QDRO. She asserts, also, that the court erred in denying her motion for rehearing, because it was misled by defendant's attorney. We affirm.

### THE FACTS

The parties were divorced on December 13, 1983, following a twenty-three-year marriage. Plaintiff was awarded a portion of defendant's pension. Specifically, the judgment provided she receive:

C. A 50% interest in the present value of defendant's pension plan with the Sheet Metal Workers Local Union No. 80, subject to the terms and conditions set forth herein.

1. Plaintiff shall have no interest in any future

contribution made by defendant or his employer to defendant's pension plan subsequent to the date of this Judgment.

2. Plaintiff shall be bound by all of the terms of defendant's pension plan and shall accept distribution according to the terms thereof.

3. Plaintiff's interest in defendant's pension plan is limited to her right to receive distribution in the future as set forth herein.

4. Any taxes paid by defendant upon distribution which are attributable to plaintiff's interest as set forth herein will result in a dollar-for-dollar reduction in the amount due plaintiff hereunder.

5. Plaintiff shall receive monthly payments of her interest in defendant's pension plan at such time as defendant begins to receive his payments. Plaintiff's monthly receipts shall be calculated in accordance with the following formula:

$$[\$470.21 \times 50\%] \times \frac{23}{\text{total no. of years of employment through SMU Local No. 80}}$$

Defendant's pension plan was a defined benefit plan. Defendant was one hundred percent vested at the time of the divorce. He was eligible to receive an early retirement pension beginning April 1, 1990, and a normal retirement pension beginning April 1, 1992.

On August 17, 1990, plaintiff filed a "Motion for Entry of a Qualified Domestic Relations Order and for Addition of Pre-retirement and Survivorship Rights to Plaintiff's Pension Rights." She filed the motion after having served the divorce judgment on the pension fund administrator and being informed that she was not entitled to survivorship rights. Plaintiff averred that, before enactment of the Retirement Equity Act (REA) of 1984, an ex-spouse was not entitled to receive survivorship rights in a former spouse's pension plan. PL 98-

397, 98 Stat 1433. Since enactment of the REA, QDROS routinely contain provisions designating an ex-spouse as a surviving spouse, entitling him or her to survivorship rights in a former spouse's pension.

Defendant argued that plaintiff's motion was an attempt to modify the divorce judgment without legally justifiable grounds. Defense counsel alleged that defendant's second wife would be substantially and materially prejudiced if that were accomplished. He argued, also, that the REA may be applied only prospectively; therefore, it has no effect on the parties' divorce judgment which was entered before its enactment.

Defendant died on October 23, 1990, after oral argument on plaintiff's motion but before the trial court's ruling. Defendant had not remarried at the time of his death and had drawn none of his pension. Plaintiff filed a motion to add the estate and pension fund as parties and to enjoin the pension fund from paying benefits. The court entered a temporary restraining order, prohibiting the pension fund from distributing payments until ordered. Neither the estate nor the pension fund was added as a party.

The trial judge denied plaintiff's motion for entry of a QDRO and for modification of the divorce judgment. He concluded that the REA cannot be applied retroactively. Moreover, he found, nothing in the consent divorce judgment reveals any intent by the parties to provide plaintiff with survivorship rights. The trial judge found no valid reasons to amend the divorce judgment.

Plaintiff filed a motion for rehearing. She argued that the trial court was misled by defense counsel's representation that defendant had remarried. The motion was denied.

AN OVERVIEW OF ERISA AND REA

Congress passed the Employee Retirement Income Security Act (ERISA) of 1974 in order to provide better protection for beneficiaries of private employee pension plans. *Rohrbeck v Rohrbeck,* 318 Md 28; 566 A2d 767 (1989), citing PL 93-406, 88 Stat 829. ERISA contained an anti-alienation provision which precluded plan participants from assigning or alienating their benefits under pension plans subject to the act. See 29 USC 1056(d)(1); 26 USC 401(a)(13). The statute also contained a preemption provision, designed to establish pension plan regulation as exclusively a federal concern. *Rohrbeck,* 31, citing 29 USC 1144; *Pilot Life Ins Co v Dedeaux,* 481 US 41, 46; 107 S Ct 1549; 95 L Ed 2d 39 (1987).

The combination of anti-alienation and preemption provisions eventually raised a question as to the validity of state domestic relations orders requiring payment of pension benefits to ex-spouses, ineligible plan beneficiaries. *Rohrbeck, supra.* Apparently, the question had not been anticipated by Congress. *Id.* It was eventually answered by enactment of the REA. Legislative history of the REA provides:

> The bill clarifies the spendthrift provisions of the Internal Revenue Code by providing new rules for the treatment of certain domestic relations orders. The bill creates an exception to the ERISA preemption provision with respect to these orders. The bill provides procedures to be followed by a plan administrator and an alternate payee (a child, spouse, or former spouse of a participant) with respect to domestic relations orders.
>
> Under the bill, if a domestic relations order requires the distribution of all or a part of a participant's benefits under a qualified plan to an

alternate payee, then the creation, recognition, or assignment of the alternate payee's right to the benefits is not considered an assignment or alienation of benefits under the plan if and only if the order is a qualified domestic relations order. Because rights created, recognized, or assigned by a qualified domestic relations order, and benefit payments pursuant to such an order, are specifically permitted under the bill, State law providing for these rights and payments under a qualified domestic relations order will continue to be exempt from Federal preemption under ERISA. [*Rohrbeck*, 33, citing H Rep No 655 at 18; S Rep No 575 at 19; US Code Cong & Admin News 2547, 2565 (1984).]

Before enactment of the REA, ERISA did not allow an ex-spouse to obtain survivorship rights in a former spouse's pension fund. Now, the REA specifically requires retirement plans to provide a divorced spouse pre- and post retirement survivorship benefits if ordered by a court. 26 USC 401(a) (11). If a married vested participant dies before payment of an annuity commences, a qualified preretirement survivor annuity can be provided to the surviving spouse. 26 USC 401(a)(11). A former spouse may be designated as a surviving spouse under a QDRO and receive the same survivorship benefits. 26 USC 414(p)(5).

A preretirement survivor annuity provides an annuity to a surviving spouse if the participant dies before retirement. If an alternate payee is not designated as the surviving spouse under a plan's preretirement survivor annuity and the participant dies before retirement, the alternate payee's entire interest is forfeited. [2 Michigan Family Law (3d ed), § 12.28, p 12-35.]

The REA made QDROs a limited exception to ERISA's anti-alienation provision. 26 USC 401, 404; 29 USC 1056(d). It is applicable to plan years

beginning after December 31, 1984. The parties' divorce was final before that date. However, a plan administrator can treat any pre-1985 domestic relations order as a QDRO, even if it does not meet the statutory requirements. *In re Eichelberger,* 100 Bankr 861, 866 (SD Tex, 1989), citing § 303(d) (2) of REA.

In this case, the plan administrator did treat the parties' divorce judgment as a QDRO. However, since the judgment did not provide for survivorship rights, the plan administrator refused to extend them to plaintiff.

### THE DIVORCE JUDGMENT CANNOT BE INTERPRETED TO PROVIDE SURVIVORSHIP RIGHTS

Even if we applied the REA amendments retroactively, plaintiff would be entitled to entry of the QDRO she seeks only if the divorce judgment were modified. Modification would be necessary because, as written, the judgment precludes distribution of pension benefits to plaintiff until defendant begins to and only for so long as he does receive them. Defendant died before drawing any pension benefits.

Plaintiff argues that the court should exercise its discretion to modify the divorce judgment, because extraordinary circumstances exist and defendant's substantial rights will not be detrimentally affected. See *Tomblinson v Tomblinson,* 183 Mich App 589, 594-595; 455 NW2d 346 (1990), citing MCR 2.612(C)(1)(f).

We find no extraordinary circumstances warranting modification of the divorce judgment. Given the state of the law and the language of defendant's pension plan in 1983, plaintiff knew a former spouse could not have acquired survivorship rights in defendant's pension. Having weighed

that information in the balance, we refuse to allow modification of the divorce judgment to include survivorship rights; they could not reasonably have been intended by the parties. Granted that plaintiff's pension award in this case was potentially illusory. However, plaintiff is charged with the knowledge that the mortality tables showed defendant was likely to predecease her. In order to fully secure her rights to the pension value awarded her, plaintiff would have had to negotiate an alternative payment method to take effect if defendant predeceased her.

Even if extraordinary circumstances did exist warranting modification of the divorce judgment, plaintiff's motion for entry of the QDRO did not fall within the "reasonable time" requirement of MCR 2.612(C)(2). See *Tomblinson,* 595. As stated earlier, the REA is applicable to plan years beginning after December 31, 1984; plaintiff did not file her motion until August, 1990. She offers no explanation for her delay in seeking a modification. In this case, allowing a five year time lapse was unreasonable.

Since no grounds exist warranting modification of the divorce judgment, plaintiff is not entitled to entry of a QDRO which provides her with survivorship rights in defendant's pension plan.

### THE TRIAL COURT DID NOT ERR IN DENYING PLAINTIFF'S MOTION FOR REHEARING

Plaintiff argues that the trial court was misled by defense counsel's representation that defendant had remarried. However, plaintiff filed a supplemental brief prior to the issuance of the trial court's opinion, informing it that defendant was not married at the time of his death. Therefore, the trial court is presumed to have been notified of defendant's counsel's misrepresentation when ruling on plaintiff's motion for rehearing.

We find no error in the court's denial of the motion because, in any event and most regrettably, the law affords plaintiff no relief from the terms of her 1983 agreement.

Based on our disposition of these issues, plaintiff's remaining issues have been rendered moot.

Affirmed.

CONNOR, J., concurred.

MICHAEL J. KELLY, P.J., concurred in the result only.