### NEVILLE v NEVILLE

Docket Nos. 294461 and 302946. Submitted February 7, 2012, at Detroit. Decided February 16, 2012, at 9:05 a.m.

Defendant, Mark T. Neville, moved in the Wayne Circuit Court to clarify and amend the 1995 qualified domestic relations order (QDRO) entered in accordance with the terms of his and plaintiff Kathy Kay Neville's 1994 divorce judgment, arguing that the administrator of his employer's retirement plan had construed the QDRO in a manner that would give more benefits to plaintiff than provided for in the divorce judgment and that the QDRO itself did not conform to the terms of the judgment. In August 2009, the court, Connie Marie Kelley, J., determined that defendant's motion had been improperly brought under MCR 2.612(C)(1)(a) and (f) because the QDRO was not an appealable judgment, treated his motion as a request to amend the QDRO to be consistent with the divorce judgment, and granted the motion. The court thereafter amended the QDRO in March 2010. Plaintiff applied for leave to appeal the August 2009 decision (Docket No. 294461), which the Court of Appeals denied. In lieu of granting plaintiff's application for leave to appeal, the Supreme Court remanded the case to the Court of Appeals for consideration as on leave granted. 488 Mich 899 (2010). Plaintiff also appealed by delayed leave granted the March 2010 order amending the QDRO (Docket No. 302946), and the cases were consolidated.

The Court of Appeals *held*:

1. Under the language of MCL 552.101(4) that was in effect at the time of the parties' 1994 divorce, a divorce judgment was required to conclusively determine all the rights of the husband and wife in any pension, annuity, or retirement benefits. A QDRO entered in accordance with the terms of a divorce judgment is part of the property settlement. The trial court erred by treating the QDRO as a separate order and regarding defendant's motion as one to amend that QDRO rather than as a motion for relief from the judgment under MCR 2.612(C)(1)(a) and (f) because the final divorce judgment encompassed both the 1994 divorce judgment and the 1995 QDRO as a whole. The terms of the parties' property

settlement were not conclusively established by the divorce judgment because it mandated entry of a QDRO.

2. A court may relieve a party from a final judgment, order, or proceeding on the basis of mistake, inadvertence, surprise, or excusable neglect or any other reason justifying relief from operation of the judgment under MCR 2.612(C)(1)(a) and (f). However, under MCR 2.612(C)(2), the motion must be made within a reasonable time, and for the grounds stated in MCR 2.612 (C)(1)(a), within one year after the judgment, order, or proceeding was entered or taken. Defendant's motion, which he filed more than 14 years after entry of the final divorce judgment, was time-barred under MCR 2.612(C)(2) to the extent he sought substantive changes through entry of an amended QDRO.

3. The treatment and distribution of pension benefits may vary. When the division of pension benefits is established by the terms of parties' property settlement, the trial court must determine the parties' intent as manifested in their agreement through application of principles of contract construction. However, when the contract language in a divorce judgment is unambiguous, it must be applied as written. The trial court erred by finding that the property-settlement provisions in the 1994 divorce judgment controlled distribution of the pension benefits in issue and by concluding that it limited plaintiff's survivorship benefits to a proportionate interest based on years of the marriage. Because the divorce judgment encompassed both the divorce judgment and the QDRO, the trial court erred by assuming that there was a conflict between the two documents rather than recognizing that the parties were free to modify the terms of their property settlement in the divorce judgment through mutual assent and that any changes to those provisions as reflected in the 1995 QDRO were controlling.

4. A single method for valuing a pension plan is not required, even when the division of the pension plan is to be determined by the trial court rather than by agreement of the parties. If the parties agree in the divorce judgment on how the pension plan is to be divided, the court must determine the parties' intent through application of the principles of contract construction. Because the parties were free to modify the terms of their property settlement when approving the QDRO, the trial court erred by developing a formula for plaintiff's share of defendant's retirement benefits that differed from the formula set forth in the QDRO.

Decision granting defendant's motion to amend in Docket No. 294461 reversed; amended QDRO in Docket No. 302946 vacated and original QDRO reinstated.

1. MOTIONS AND ORDERS — RELIEF FROM FINAL JUDGMENT — MISTAKE, INADVERTENCE, SURPRISE, OR EXCUSABLE NEGLECT.

  A court may relieve a party from a final judgment, order, or proceeding on the basis of mistake, inadvertence, surprise, or excusable neglect or any other reason justifying relief from operation of the judgment; the motion must be made within a reasonable time, and for the grounds stated in MCR 2.612(C)(1)(a), within one year after the judgment, order, or proceeding was entered or taken (MCR 2.612[C][1][a] and [f], [C][2]).

2. DIVORCE — PROPERTY SETTLEMENT — QUALIFIED DOMESTIC RELATIONS ORDERS.

  A qualified domestic relations order executed in accordance with the terms of a divorce judgment is part of the property settlement and must be treated as part of the final divorce judgment.

*Judith A. Curtis* for Kathy Kay Neville.

*Daniel P. Marsh* for Mark T. Neville.

Before: SERVITTO, P.J., and TALBOT and K. F. KELLY, JJ.

PER CURIAM. In Docket No. 294461, plaintiff appeals the trial court's August 12, 2009, opinion and order granting defendant's motion to clarify and amend a qualified domestic relations order (QDRO) that was previously entered on March 14, 1995. This Court originally denied plaintiff's application for leave to appeal, *Neville v Neville*, unpublished order of the Court of Appeals, entered February 16, 2010 (Docket No. 294461), but our Supreme Court subsequently remanded the case to this Court for consideration as on leave granted, *Neville v Neville*, 488 Mich 899 (2010). In Docket No. 302946, plaintiff appeals by delayed leave granted the trial court's March 11, 2010, amended QDRO. This Court consolidated the two appeals. In Docket No. 294461, we reverse the trial court's August 12, 2009, decision granting defendant's motion to amend the March 14, 1995, QDRO. In Docket No. 302946, we vacate the March 11, 2010, amended QDRO and reinstate

the March 14, 1995, QDRO without prejudice to the trial court's authority to amend the latter order to carry out the parties' intent as expressed in their agreement.

The parties were married in March 1978. On November 14, 1994, the trial court entered a default divorce judgment, which provided in pertinent part:

> IT IS FURTHER ORDERED AND ADJUDGED that Plaintiff is awarded one half of the present value of the general retirement pension through Defendant's employer. A Qualified Domestic Relations Order shall enter. Plaintiff shall be entitled to a percentage based upon years worked during the marriage over (16.5 years) total years worked. Value shall be based upon contributory, noncontributory and supplemental, if applicable. The Plaintiff shall be deemed "surviving spouse" for pre and post benefit purposes.

A QDRO was later entered on March 14, 1995, which provided in pertinent part:

> IT IS HEREBY ORDERED AND ADJUDGED that pension benefits, contributory, non-contributory, and supplemental, otherwise payable to the Participant, MARK T. NEVILLE, under his pension plan(s) with Ford Motor Company, specifically including the Ford Motor Company General Retirement Plan shall be apportioned as follows:
>
> A. The amount payable to the Alternate Payee with respect to all pension benefits, contributory, non-contributory, and supplemental, shall be the amount otherwise payable to such Participant pursuant to the Plan(s) multiplied by 50% and multiplied by a fraction the numerator of which is the number of years of service of such Participant under such Plan(s) during the marriage, namely, 16 years, 6 months, and the denominator of which is the total number of years of service of such Participant under the Plan(s). Years of service shall mean years and any fractional year used in computing the particular benefit.

\* \* \*

> C. The Alternate Payee shall be entitled to pre and post retirement survivorship retirement benefits and shall be treated as the surviving spouse under the Plan(s), accordingly, in the event of the death of the Participant either before or after commencement of retirement benefits, payment shall be made to the Alternate Payee as provide in the Plan for the surviving spouse.

The March 14, 1995, QDRO also provided that "modifications of this Order shall be allowable for purposes of carrying out the intent of the parties."

In April 2009, defendant moved for clarification and amendment of the QDRO, relying in part on MCR 2.612(C)(1)(a) and (f). The motion alleged that an administrator of his employer's retirement plan had construed the QDRO in a manner that would provide more benefits to plaintiff than provided for in the divorce judgment (specifically a portion of defendant's early-retirement incentives and surviving-spouse benefits earned by defendant after the divorce). On August 12, 2009, the trial court treated defendant's motion as a request to amend the March 14, 1995, QDRO to be consistent with the divorce judgment and granted the motion. The court thereafter entered an amended QDRO on March 11, 2010, to correct what it determined to be inconsistencies between the original divorce judgment and the March 14, 1995, QDRO with respect to plaintiff's right to share in defendant's retirement benefits. The amended QDRO treated the original March 14, 1995, QDRO as a *nunc pro tunc* order entered as part of the November 14, 1994, divorce judgment.

When entering the order, the trial court determined that the March 14, 1995, QDRO improperly expanded benefits provided for in the divorce judgment by referring to more than one plan, and not just the general retirement plan. The trial court also expressed concern

that the phrase "all pension benefits" in the March 14, 1995, QDRO suggested that it included benefits not contemplated by the divorce judgment, such as early-retirement benefits. In addition, the trial court was concerned that defendant's exercise of early-retirement incentives might reduce the pension benefit that plaintiff would be entitled to under the terms of the divorce judgment if pension funds were used for the payment. On March 11, 2010, the trial court fashioned an amended QDRO to account for this possibility and adopted a formula for determining plaintiff's share of pension benefits that did not consider retirement benefits accrued by defendant after the date of the divorce. The trial court also limited plaintiff's survivorship rights to "a fraction of all pre-retirement survivor benefits . . . ."

Our Supreme Court's remand order concerning the trial court's August 12, 2009, opinion and order granting defendant's motion to amend the March 14, 1995, QDRO directs this Court to consider the following questions:

> [W]hether the trial court correctly held that the parties' November 14, 1994, divorce judgment limited the plaintiff's survivorship benefit to a proportionate interest based on years of marriage, that the divorce judgment conflicted with the 1995 qualified domestic relations order (QDRO) agreed upon by the parties, that the terms of the divorce judgment should control over the terms of the QDRO, and that the defendant's motion to have the QDRO amended was not time-barred. [*Neville*, 488 Mich at 899.]

Although plaintiff asserts that the Supreme Court's questions in Docket No. 294461 only involve the survivorship benefit, we conclude that with the exception of the first question, which is directed specifically at the methodology for determining the survivorship benefit, the remaining questions are also pertinent to plaintiff's

appeal in Docket No. 302946 regarding the formula adopted by the trial court to determine other benefits. Therefore, we shall consider these questions as they relate to both appeals.

We review de novo the trial court's decision interpreting the November 14, 1994, divorce judgment and the March 14, 1995, QDRO. *Silberstein v Pro-Golf of America, Inc*, 278 Mich App 446, 460; 750 NW2d 615 (2008). To the extent that the judgment and the QDRO were entered pursuant to the parties' agreement, questions involving the interpretation of the agreement, including whether any language is ambiguous, are also reviewed de novo because judgments entered pursuant to the agreement of parties are in the nature of a contract. *Reed v Reed*, 265 Mich App 131, 141; 693 NW2d 825 (2005); *Gramer v Gramer*, 207 Mich App 123, 125; 523 NW2d 861 (1994). In addition, we review de novo as a question of law issues involving a trial court's interpretation and application of court rules or statutes. *Henry v Dow Chem Co*, 484 Mich 483, 495; 772 NW2d 301 (2009); *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008).

We first address plaintiff's challenge to the timeliness of defendant's motion for clarification and amendment of the March 14, 1995, QDRO (and the Supreme Court's directive that we consider whether defendant's motion to have the QDRO amended was not time-barred.) As authority for the motion, defendant cited MCR 2.612(C)(1)(a) and (f), which provide that a court may relieve a party from a "final judgment, order, or proceeding" on the basis of "[m]istake, inadvertence, surprise, or excusable neglect" or "[a]ny other reason justifying relief from the operation of the judgment." MCR 2.612(C)(2) provides that "[t]he motion must be made within a reasonable time, and, for the grounds

stated in subrules (C)(1)(a), (b), and (c), within one year after the judgment, order, or proceeding was entered or taken."

The trial court determined that MCR 2.612(C) was inapplicable to defendant's motion in its entirety because he was "not seeking relief from the [divorce judgment]. On the contrary, Defendant is requesting that the QDRO be amended to be consistent with the [divorce judgment]." Citing *Lee v Lee*, unpublished opinion per curiam of the Court of Appeals, issued April 8, 2004 (Docket No. 246183), the trial court also held that because the QDRO did not conform to the judgment of divorce, the QDRO was invalid. However, at the time the divorce judgment was entered, MCL 552.101(4) required that a divorce judgment determine all rights of the husband and wife in "[a]ny pension, annuity, or retirement benefits." In *Mixon v Mixon*, 237 Mich App 159, 166; 602 NW2d 406 (1999), this Court construed the statute as requiring that pension rights be decided conclusively. Consistently with this obligation, entry of a QDRO was explicitly required by the terms of the November 14, 1994, divorce judgment. As such, the trial court should have treated the March 14, 1995, QDRO as *part of* the divorce judgment when ruling on defendant's motion. *Id.* at 166-167. Instead, the trial court erroneously treated the QDRO as a completely separate order, thus dismissing the application of MCR 2.612 to defendant's motion as a whole.[1]

---

[1] The trial court further erred by giving the March 14, 1995, QDRO *nunc pro tunc* effect when entering the amended QDRO on March 11, 2010. "An entry nunc pro tunc is proper to supply an omission in the record of action really had, but omitted through inadvertence or mistake." *Shifferd v Gholston*, 184 Mich App 240, 243; 457 NW2d 58 (1990). Its purpose is not to supply omitted action of a trial court. *Freeman v Wayne Probate Judge*, 230 Mich 455, 460; 203 NW 158 (1925). There is nothing in the record to indicate that the March 14, 1995, QDRO was

The trial court's reliance on *Lee* was misplaced because unpublished decisions are not precedentially binding under the rules of stare decisis. MCR 7.215(C)(1). While an unpublished decision may be considered for its persuasive reasoning, *Beyer v Verizon North, Inc*, 270 Mich App 424, 430-431; 715 NW2d 328 (2006), the decision in *Lee* is not persuasive as applied to this case because it did not substantively treat a QDRO as part of the divorce judgment. Rather, relying on *Quade v Quade*, 238 Mich App 222, 224, 226; 604 NW2d 778 (1999), and *Roth v Roth*, 201 Mich App 563; 506 NW2d 900 (1993), the *Lee* Court concluded that separate and distinct components of a pension plan must be specifically included in a divorce judgment in order to be included in a QDRO. And the two cases relied on by the *Lee* Court are also factually distinguishable.

This case is factually distinguishable from *Roth*, 201 Mich App at 564-565, because the 1983 divorce judgment in that case did not contain any provision requiring entry of a QDRO. Rather, the plaintiff moved in 1990 for entry of a separate QDRO and to add certain pension rights because of a change in the law. *Id.* at 565. The facts in *Quade* were similar to those in this case to the extent that the divorce judgment in *Quade* provided for a transfer of pension rights by way of a QDRO. But unlike this case, there was no indication in *Quade* that the parties reached an agreement regarding the terms of a QDRO. Rather, the trial court refused to enter a QDRO that contained language that differed from the divorce judgment. *Quade*, 238 Mich App at 223-224. This Court further determined that the divorce judg-

entered as a *nunc pro tunc* order, effective as of the date of the divorce judgment, and the purpose of the QDRO was not to supply an omitted action. Rather, the QDRO was a subsequent consensual order expressly required by the divorce judgment.

ment contained a waiver provision whereby each party waived any interest in any individual retirement account, pension, or profit-sharing plan except as specifically provided therein. *Id.* at 226.

The divorce judgment in this case does not contain the type of waiver language used in *Quade*. There is also no evidence that the March 14, 1995, QDRO was a contested order as opposed to a consensual one. Keeping in mind the requirement that a divorce judgment conclusively determine the parties' rights, *Mixon*, 237 Mich App at 166, we conclude that the March 14, 1995, QDRO must be treated as part of the property settlement in the divorce judgment. Cf. *Thornton v Thornton*, 277 Mich App 453, 457-458; 746 NW2d 627 (2007) (holding that a QDRO executed contemporaneously with a divorce judgment and required by the terms of the judgment must be considered part of the property settlement). The QDRO and the divorce judgment are thus two parts of a whole. Because MCR 2.612 applies to relief from final judgment or orders and the March 14, 1995, QDRO is properly treated as part of the final divorce judgment, we conclude that the trial court erred by determining that MCR 2.612(C) did not apply to defendant's request for substantive changes to the March 14, 1995, QDRO to make it consistent with the property-settlement provisions contained in the November 14, 1994, divorce judgment.

This is not to say that the trial court could not *interpret and clarify* the parties' agreement without considering MCR 2.612. It may do so provided it does not *change* the parties' substantive rights as reflected in the parties' agreement. See *Bers v Bers*, 161 Mich App 457, 464; 411 NW2d 732 (1987). In order to determine the parties' agreement, a court must consider all of its terms, including any modifications agreed

to by the parties. See *Forge v Smith*, 458 Mich 198, 207; 580 NW2d 876 (1998) (noting that when one writing refers to another instrument for additional terms, the two writings should be read together), and *Adell Broadcasting Corp v Apex Media Sales, Inc*, 269 Mich App 6, 11; 708 NW2d 778 (2005) (stating that contracting parties may modify their contract through mutual assent). Because the trial court failed to construe as a whole the terms of the parties' agreement, which consisted of the property settlement terms in the divorce judgment and the March· 14, 1995, QDRO that was made part of the judgment, its conclusion that MCR 2.612 did not apply to defendant's motion was affected by an error of law.

As a matter of law, we conclude that MCR 2.612 was applicable to defendant's motion to the extent that defendant sought, and the trial court granted, relief in the form of substantive modifications to the provisions of the parties' agreement. Because defendant has neither argued nor otherwise established on appeal that his motion—brought more than 14 years after entry of both the November 14, 1994, divorce judgment and the March 14, 1995, QDRO—could be considered timely under MCR 2.612(C)(2), we hold that the motion was time-barred to the extent that it sought substantive changes through entry of an amended QDRO. See *Thornton*, 277 Mich App at 454-455; 458 (holding that the defendant's 2005 motion to amend a QDRO entered in 1993 was untimely and unreasonable to the extent that it could be interpreted as a motion for relief from the judgment under MCR 2.612). This Court, however, will not reverse when a trial court reaches the right result for a wrong reason. *Coates v Bastian Bros, Inc*, 276 Mich App 498, 508-509; 741 NW2d 539 (2007). Therefore, we turn to the remaining questions before us regarding survivorship and other retirement benefits to

determine if plaintiff has demonstrated that her substantive rights have been affected.

With regard to the trial court's decision that the divorce judgment limited plaintiff's survivorship benefit to a proportionate interest based on years of marriage, we agree with plaintiff that the judgment contains no such limitation. The treatment and distribution of pension benefits may vary. *Pickering v Pickering*, 268 Mich App 1, 8; 706 NW2d 835 (2005). The property settlement in this case provides only that "[t]he plaintiff shall be deemed 'surviving spouse' for pre and post benefit purposes." Because the contract language is unambiguous, we must apply it as written. *Coates*, 276 Mich App at 503; *Reed*, 265 Mich App at 141, 147-148.

This construction of the divorce judgment is consistent with the March 14, 1995, QDRO agreed upon by the parties, except that the QDRO specifies that plaintiff is to be treated as "the surviving spouse under the Plan(s)." Improperly assuming the existence of some substantive conflict between the November 14, 1994, divorce judgment and the March 14, 1995, QDRO with respect to survivorship benefits, the trial court erred by finding that the terms of the November 14, 1994, divorce judgment were controlling. As discussed previously, the March 14, 1995, QDRO is properly treated as part of the final divorce judgment. Given that the parties were free to modify the terms of their November 1994 property settlement through mutual assent, any changes to those property-settlement provisions as reflected in the March 1995 QDRO are controlling. *Adell Broadcasting*, 269 Mich App at 11. Because the trial court's August 12, 2009, decision modifying plaintiff's survivorship benefits under the March 14, 1995, QDRO affected plaintiff's substantive rights and defendant's motion was untimely under MCR 2.612(C), we reverse the trial court's decision.

With respect to plaintiff's challenge in Docket No. 302946 to the formula crafted by the trial court to determine her share of defendant's other retirement benefits, we note that no one method for valuing a pension plan is required in a divorce action, even when the division of the pension plan is to be determined by the trial court rather than by agreement of the parties. *Heike v Heike*, 198 Mich App 289, 292; 497 NW2d 220 (1993). When, as in this case, the division is established by agreement of the parties, a court's task is to determine the parties' intent as manifested in their agreement through application of principles of contact construction. *Coates*, 276 Mich App at 503; *Gramer*, 207 Mich App at 125.

The November 14, 1994, divorce judgment purports to use a "present value" method of valuation for defendant's "general retirement pension" and awards plaintiff 1/2 of the present value of that pension. This language suggests a methodology that would reduce potential pension benefits to their present value and distribute them immediately. See *Boyd v Boyd*, 116 Mich App 774, 782; 323 NW2d 553 (1982); see also *Burkey v Burkey (On Rehearing)*, 189 Mich App 72, 77; 471 NW2d 631 (1991) (defining "present value" as "essentially the amount of money a person must receive today in order to provide the same benefit which he is scheduled to receive later").

At the same time, the November 14, 1994, divorce judgment provides little direction on how to determine present value or the distribution. It specifies that "value" is to be based on "contributory, noncontributory and supplemental, if applicable," but fails to specify the applicable period for accumulating these value factors or whether they could be based on future accumulations. The judgment entitles plaintiff to a

"percentage based upon years worked during the marriage (16.5 years) over total years worked," but fails to specify what factor the percentage is applied to for purposes of determining her payment.

In addition, the parties' agreement that a QDRO would be entered at a subsequent date was inconsistent with any intent for immediate distribution because it would allow plaintiff to receive defendant's pension benefits as an alternate payee under the Employee Retirement Income Security Act. 29 USC 1056(d). As discussed previously, the requirement that a QDRO be subsequently entered also establishes that the November 14, 1994, divorce judgment did not conclusively establish the terms of the property division.[2] *Mixon*, 237 Mich App at 166. Because the parties were free to modify the terms of their property settlement when approving the March 14, 1995, QDRO, *Adell Broadcasting*, 269 Mich App at 11, we conclude that the trial court erred by crafting a formula for plaintiff's share of defendant's retirement benefits that differed from that QDRO. Because the trial court's error changed the parties' substantive rights and defendant's motion was untimely under MCR 2.612(C), we vacate the trial court's March 11, 2010, amended QDRO and reinstate the March 14, 1995, QDRO, without prejudice to the trial court's authority to make nonsubstantive amendments to the March 14, 1995, QDRO for the purpose of carrying out the parties' intent.

In Docket No. 294461, we reverse the trial court's decision granting defendant's motion to amend, and in

---

[2] Under 29 USC 1056, the plan administrator must also approve the QDRO. Once the plan administrator determines that a domestic relations order meets the qualifications set forth in 29 USC 1056(d)(3)(C) and (D), benefits must be paid in accordance with the QDRO. See *Brown v Continental Airlines, Inc*, 647 F3d 221, 224 (CA 5, 2011), and 29 USC 1056(d)(3)(A).

Docket No. 302946 we vacate the trial court's March 11, 2010, amended QDRO and reinstate the March 14, 1995, QDRO.

SERVITTO, P.J., and TALBOT and K. F. KELLY, JJ., concurred.