# STATE OF MICHIGAN

# COURT OF APPEALS

JANET LYNN KIRK,

      Plaintiff-Appellant,

v

MARY ANN OSTERBECK,

      Defendant-Appellee.

UNPUBLISHED
February 14, 2017

No. 329377
Macomb Circuit Court
LC No. 2015-000581-NM

Before: WILDER, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

In this legal malpractice action, plaintiff appeals of right from the trial court's opinion and order granting summary disposition in favor of defendant. We affirm.

## I. UNDERLYING FACTS AND PROCEEDINGS

This case arises from an underlying dispute between plaintiff and Vickey Presley regarding entitlement to survivor benefits in William Kirk's pension. Plaintiff and William were divorced in August 1994 pursuant to a Consent Judgment of Divorce. The pension provision of the Consent Judgment of Divorce granted plaintiff 50% of the current value of William's pension for the period of time of the marriage and directed plaintiff's attorney to submit a Qualified Domestic Relations Order (QDRO) for entry with the court. The Consent Judgment of Divorce did not contain any language specifically granting plaintiff survivor benefits in the pension.

In August 1995, approximately one year after the entry of the Consent Judgment of Divorce, the court entered a QDRO, requiring Ford Motor Company to pay a portion of William's pension benefits to plaintiff. The QDRO further provided that plaintiff would be treated as the surviving spouse under the pension and, in the event of William's death, payment would be made to plaintiff as provided for in the plan for a surviving spouse. The QDRO, which was drafted by plaintiff's attorney, was not signed by plaintiff or William, but was signed by their respective attorneys and entered by the court.

Several years later, in April 2005, William married Presley. In 2007, William retired. On his retirement application, William designated Presley as his spouse and elected that, upon his death, his surviving spouse would receive 65% of his pension income benefit for her lifetime. On June 29, 2011, William died and plaintiff, pursuant to the QDRO, began receiving monthly survivor income benefits from William's pension. Apparently, Presley, who was married to

-1-

William at the time of his death and was designated as William's surviving spouse in the retirement application, attempted to obtain the survivor benefits from Ford. She was unsuccessful, prompting her to file a motion to amend the QDRO, asserting that she and not plaintiff was entitled to the survivor benefits in William's pension. Plaintiff retained defendant, Mary Ann Osterbeck, to provide legal representation in defending against Presley's motion.[1]

To support her motion to amend the QDRO, Presley argued that Michigan case law provides that the right of survivorship in a pension does not extend to a divorced spouse unless it is specifically awarded in the judgment of divorce. Presley relied on *Quade v Quade*, 238 Mich App 222; 604 NW2d 778 (1999) and *Roth v Roth*, 201 Mich App 563; 506 NW2d 900 (1993), wherein this Court held that "separate and distinct components of pension plans must be specifically awarded in a judgment of divorce in order to be included in a QDRO," including the right of survivorship. *Quade*, 238 Mich App at 224-225. Osterbeck filed an answer to Presley's motion, on plaintiff's behalf, arguing that the QDRO reflected the parties' intent for plaintiff to receive the survivor benefits in William's pension, and thus the Consent Judgment of Divorce should be amended, in equity, to comport with the QDRO. To support her position, Osterbeck relied on *Erway v Erway*, unpublished opinion per curiam of the Court of Appeals, issued February 27, 2007 (Docket No. 265194), wherein this Court amended the parties' judgment of divorce to reflect the QDRO, which awarded 50% of the defendant's early retirement benefits to the plaintiff although the original judgment awarded only general retirement benefits and did not specifically award early retirement benefits. The trial court in *Erway* clarified that it had intended to award the plaintiff an interest in both general and early retirement benefits, and thus amendment of the judgment was appropriate under MCR 2.612(A)(1) to accurately reflect what was done and decided by the trial court.

At the hearing on the motion to amend the QDRO, conducted before St. Clair Circuit Court Judge Cynthia A. Lane, Presley's attorney argued that the Consent Judgment of Divorce did not specifically address plaintiff's entitlement to the survivor benefits in William's pension, William did not sign the QDRO, and William never agreed to "amend" the Consent Judgment to reflect that plaintiff would be receiving the survivor benefits as part of the divorce settlement. Judge Lane then inquired whether there was any evidence that the parties intended to give plaintiff the survivor benefits and noted that the Consent Judgment did not appear to reflect any intent to grant a survivor benefit. Judge Lane found it "troublesome" that the QDRO was not entered until almost one year after the entry of the Consent Judgment and further noted that *Erway*, being an unpublished opinion, was not binding precedent. Following the hearing, apparently in response to Judge Lane's concerns, Osterbeck submitted affidavits from a friend and a relative indicating that, at the time of the divorce, William intended that plaintiff receive his pension benefits upon his death.

Relying on this Court's decisions in *Quade* and *Roth*, Judge Lane granted Presley's motion to amend the QDRO, finding that "the Consent Judgment of Divorce is silent as to

---

[1] Osterbeck previously represented plaintiff in the original divorce proceedings and drafted the QDRO.

surviving spouse benefits in the pension award section," and thus, those rights could not be extended to plaintiff as a divorced spouse as part of a QDRO. Judge Lane then ordered that the language contained in the QDRO treating plaintiff as a surviving spouse under William's pension plan be stricken and that Presley be treated as the surviving spouse, entitling her to the surviving spouse benefits under William's pension. As a result of Judge Lane's ruling, plaintiff lost entitlement to the survivor benefits in William's pension.

Thereafter, plaintiff retained attorney James Gross to represent her in the matter. Gross filed a motion for reconsideration on plaintiff's behalf, arguing that Judge Lane improperly relied on *Quade* and *Roth* in reaching her decision and that reversal was warranted. Gross argued that the controlling law was *Neville v Neville*, 295 Mich App 460; 812 NW2d 816 (2012) and *Thornton v Thornton*, 277 Mich App 453; 746 NW2d 627 (2007), which held that a QDRO is properly treated as part of the consent judgment of divorce and that the parties were free to modify the terms of their property settlement by entering a consensual QDRO. Thus, Gross argued, because the Consent Judgment of Divorce directed the entry of a QDRO and the parties subsequently entered into a consensual QDRO, the QDRO constituted part of the consent judgment and was controlling. Presley countered the motion for reconsideration by questioning the consensual nature of the QDRO, arguing that (1) there was no evidence that the parties ever consented to plaintiff being granted a right to the survivor benefits; (2) William never signed the QDRO and never agreed to transfer to plaintiff his survivor pension benefits; and (3) the QDRO was entered one year after the judgment of divorce. Judge Lane denied plaintiff's motion for reconsideration, expressly finding that the court had reviewed *Thornton* and *Neville* and found them to be factually distinguishable from the instant case.

Plaintiff appealed Judge Lane's ruling to this Court, with attorney Gross representing her. In an unpublished decision, this Court reversed the order granting Presley's motion to amend the QDRO and remanded the case for reinstatement of the original QDRO. Just as Gross had argued in the motion for reconsideration before Judge Lane, this Court concluded that the holding in *Neville*, 295 Mich App at 471, 473, was controlling and, thus, the QDRO was properly treated as part of the divorce judgment. *Presley v Kirk*, unpublished opinion per curiam of the Court of Appeals, issued March 11, 2014 (Docket No. 315641); slip op at 4. Presley sought leave to appeal, which the Michigan Supreme Court denied. *Presley v Kirk*, 497 Mich 888; 854 NW2d 878 (2014).

Following her successful appeal, plaintiff brought this legal malpractice action against Osterbeck, her former attorney. Plaintiff alleged that Osterbeck was negligent in formulating a response to the motion to amend the QDRO both legally, by omitting appropriate and controlling case law, and factually, by failing to provide supporting affidavits from available witnesses. Specifically, plaintiff alleged that Osterbeck was negligent in failing to: (1) conduct the necessary legal research to provide the trial court with the relevant case law; (2) cite to or argue *Thornton*, 277 Mich App 453, and/or *Neville*, 295 Mich App 460, in defending the motion, instead relying on an unpublished and inapposite decision; (3) challenge the inapplicability of case law relied upon by Presley; (4) counsel plaintiff regarding the necessity of an aggressive and appropriate response to the motion; and (5) conduct any investigation or provide the court

-3-

with supporting witness affidavits.[2] Plaintiff claimed that Osterbeck "squandered the initial opportunity for the trial court to be properly informed and provided with access to the correct legal citations and Michigan authority." And, had Osterbeck properly represented her in the first place by arguing *Thornton* and *Neville* in her initial response, plaintiff would have avoided the additional legal fees she incurred to obtain the correct result, as well as the "extreme" emotional distress she suffered due to the deprivation of her benefits.

In answer to plaintiff's complaint, Osterbeck moved for summary disposition pursuant to MCR 2.116(C)(8) (failure to state a claim upon which relief can be granted) and (C)(10) (no genuine issue of material fact). Osterbeck argued that plaintiff could not establish causation in fact to support her claim because plaintiff could not prove that Judge Lane would have reached a different result had Osterbeck initially relied on *Thornton* and *Neville* to defend against Presley's motion to amend the QDRO since Judge Lane specifically found those cases to be factually distinguishable from the instant case. Osterbeck further argued that plaintiff could not establish that she breached a duty owed because the attorney-judgment rule protected Osterbeck's decision to rely on a legal theory other than the theory that was ultimately successful on appeal. In the alternative, Osterbeck argued, even if plaintiff could state a viable legal malpractice claim she could not recover the attorney fees she incurred absent malice, fraud, or similarly wrongful conduct, which plaintiff did not allege.

The trial court agreed with Osterbeck and rejected plaintiff's arguments, finding that plaintiff failed to establish causation in fact or negligent representation because, "[w]hile another attorney might have approached the case differently, the undisputed facts show that defendant did not breach her duty to competently represent plaintiff." An order granting summary disposition was entered and this appeal followed.

## II. STANDARD OF REVIEW

"This Court reviews de novo a trial court's decision on a motion for summary disposition." *BC Tile & Marble Co, Inc v Multi Bldg Co, Inc*, 288 Mich App 576, 583; 794 NW2d 76 (2010). Further, we review de novo issues of law presented on appeal. *DeHart v Joe Lunghamer Chevrolet, Inc*, 239 Mich App 181, 184; 607 NW2d 417 (1999). Here, Osterbeck sought summary disposition of plaintiff's legal malpractice claim under MCR 2.116(C)(8) and (C)(10) and the trial court granted summary disposition on those grounds. However, because the trial court went beyond the pleadings in deciding the motion, this Court reviews the court's decision as decided under MCR 2.116(C)(10). See *id*.

"A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *BC Tile & Marble Co*, 288 Mich App at 582-583. "We review a motion brought under MCR 2.116(C)(10) by considering the pleadings, admissions, and other evidence

---

[2] As more fully developed in plaintiff's brief in response to the motion for summary disposition, this allegation concerns Osterbeck's alleged failure to affirmatively respond to Presley's factual claim that the QDRO was improperly or fraudulently entered because the QDRO's surviving spouse provision was included without William's authority or consent.

submitted by the parties in the light most favorable to the nonmoving party." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). A party is entitled to summary disposition if no genuine issue of material fact exists to warrant a trial. *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

## III. LEGAL MALPRACTICE

Plaintiff argues that the trial court erred in granting Osterbeck's motion for summary disposition and dismissing her legal malpractice action. An attorney owes a duty to her client "to act as would an attorney of ordinary learning, judgment, or skill under the same or similar circumstances." *Simko v Blake*, 448 Mich 648, 658; 532 NW2d 842 (1995). To establish a claim of legal malpractice, the plaintiff has the burden of proving: "'(1) the existence of an attorney-client relationship; (2) negligence in the legal representation of the plaintiff; (3) that the negligence was a proximate cause of an injury; and (4) the fact and extent of the injury alleged.'" *Charles Reinhart Co v Winiemko*, 444 Mich 579, 585-586; 513 NW2d 773 (1994), quoting *Coleman v Gurwin*, 443 Mich 59, 63; 503 NW2d 435 (1993). Because we conclude that plaintiff cannot establish causation, as a matter of law, plaintiff's malpractice claim fails.

As set forth above, to establish her claim plaintiff had to show that Osterbeck's negligence was a proximate cause of an injury. See *Winiemko*, 444 Mich at 585. Proximate causation incorporates both cause in fact and legal or "proximate" cause. *Id.* at 586 n 13. Thus, "to prove proximate cause a plaintiff in a legal malpractice action must establish that the defendant's action was a cause in fact of the claimed injury." *Id.* at 586. "Hence, a plaintiff 'must show that *but for* the attorney's alleged malpractice, he would have been successful in the underlying suit.'" *Id.* at 586, quoting *Coleman*, 443 Mich at 63 (emphasis in *Winiemko*). "'[T]he plaintiff must present substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred.'" *Pontiac Sch Dist v Miller, Canfield, Paddock & Stone*, 221 Mich App 602, 614; 563 NW2d 693 (1997), quoting *Skinner v Square D Co*, 445 Mich 153, 164-165; 516 NW2d 475 (1994). The mere possibility of causation in fact is not enough and speculation or conjecture cannot support causation. *Pontiac Sch Dist*, 221 Mich App at 613-615 (citations omitted).

The crux of plaintiff's malpractice claim is that Osterbeck failed to formulate a proper response to the motion to amend the QDRO by presenting the appropriate law, *Thornton* and *Neville*. In granting Presley's motion to amend the QDRO, Judge Lane relied on *Quade* and *Roth*, as cited in Presley's motion, to conclude that survivor rights could not be extended to plaintiff as part of the QDRO because the Consent Judgment of Divorce was silent regarding surviving spouse benefits. On the other hand, *Neville*, which this Court ultimately relied on in reversing Judge Lane's order amending the QDRO, "held that the parties are free to modify a consent judgment of divorce by mutual consent with a subsequently entered QDRO," and any changes to the property settlement provisions reflected in the QDRO are controlling and become part of the consent judgment. *Presley*, unpub op at 4. Thus, *Neville* presented the controlling law, yet Osterbeck relied on *Erway*, an unpublished opinion. According to plaintiff, had Osterbeck properly responded to the motion by arguing *Thornton* and *Neville*, Judge Lane would

not have amended the QDRO and plaintiff would have avoided the expense of an appeal and the emotional distress resulting from the deprivation of her benefits. We disagree.

Assuming Osterbeck's failure to argue *Thornton* and *Neville* in her response to Presley's motion to amend the QDRO constituted negligence, plaintiff cannot establish that, but for Osterbeck's negligent representation, a favorable outcome would have resulted. In plaintiff's motion for reconsideration, attorney Gross argued that Judge Lane palpably erred in treating the QDRO as separate and distinct from the Consent Judgment of Divorce because the controlling cases, *Thornton* and *Neville*, hold that where a consent judgment of divorce directs the entry of a QDRO, as in the underlying case, a subsequently entered consensual QDRO is incorporated into the consent judgment of divorce and is controlling.[3] Despite being presented with the appropriate and controlling case law, Judge Lane denied plaintiff's motion for reconsideration, expressly indicating in her written order that she had reviewed *Thornton* and *Neville* but found them to be factually distinguishable. Because Judge Lane ultimately rejected the applicability of those cases, plaintiff cannot establish that she would have been successful in the trial court and avoided the cost of an appeal, as well as the emotional distress caused by the loss of her survivor benefits, but for Osterbeck's failure to argue *Thornton* and *Neville* in the initial response to Presley's motion to amend the QDRO. Plaintiff's argument that she would have prevailed had Osterbeck initially argued *Thornton* and *Neville* is mere speculation or conjecture which is not sufficient to establish cause in fact. See *Winiemko*, 444 Mich at 586-587; *Pontiac Sch Dist*, 221 Mich App at 613-615.

However, plaintiff argues, because the standard employed in deciding a motion for reconsideration is the heightened "palpable error" standard, MCR 2.119(F)(3), it is not logical to conclude that Judge Lane's denial of a motion for reconsideration demonstrates, as a matter of law, that she would not have granted Presley's motion to amend the QDRO had Osterbeck argued *Thornton and Neville* in the initial response to the motion to amend. This argument is unavailing because Judge Lane expressly indicated in the order denying plaintiff's motion for reconsideration that she reviewed *Thornton* and *Neville* and found them factually distinguishable. Thus, as the trial court held, *Thornton* and *Neville* were of "no avail" in Judge Lane's view and plaintiff's malpractice theory lacks 'but for' causation.

Further, Osterbeck's alleged negligent representation for failing to factually investigate and provide the court with witness affidavits attesting to William's intent to grant plaintiff

---

[3] Gross argued that reversal was required to correct Judge Lane's error and it would constitute an abuse of discretion if she did not reverse her order amending the QDRO. He cited *Bers v Bers*, 161 Mich App 457; 411 NW2d 732 (1987), which as the trial court noted, indicates that "[t]he purpose of MCR 2.119(F) is to allow a trial court to immediately correct any obvious mistakes it may have made in ruling on a motion, which would otherwise be subject to correction on appeal, but at a much greater expense to the parties." *Bers*, 161 Mich App at 462. Thus, as the trial court found, Gross "persuasively argued . . . that the trial judge could correct her error and rule in plaintiff's favor before any appellate expenses were incurred."

-6-

pension benefits upon his death via the QDRO was not, as a matter of law, a proximate cause of plaintiff's damages.

Although not specifically argued in Presley's motion to amend the QDRO,[4] it was implied at the hearing on the motion that the entry of the QDRO may not have been consensual. For example, Presley's attorney pointed out that William did not sign the QDRO, the trial court expressed concern that the QDRO was entered approximately one year after the entry of the Consent Judgment of Divorce, and the court questioned whether there was any other evidence of William's intent at the time of the entry of the QDRO. Nevertheless, as recognized by this Court in the underlying case, it is evident from Judge Lane's written order that her initial ruling to amend the QDRO was not premised on whether the QDRO was improperly obtained without William's authorization or consent. Instead, Judge Lane ordered amendment of the QDRO "premised on the failure of that document [the QDRO] to comport with the language of the consent judgment of divorce." *Presley*, unpub op at 2. Thus, Judge Lane ultimately did not look outside of the four corners of the Consent Judgment of Divorce and the QDRO to ascertain the parties' intent in reaching its decision to amend the QDRO.[5]

Further, after Judge Lane questioned William's intent at the hearing on the motion to amend the QDRO, Osterbeck obtained and submitted affidavits to the court within 10 days of the date of the hearing from two witnesses who stated that William, in fact, intended that plaintiff receive his pension benefits upon his death. Although it is unclear from the record whether Judge Lane received the affidavits before issuing the order granting amendment of the QDRO (the record indicates that the affidavits were received by the court on the same day that it issued its opinion), those affidavits were clearly before the trial court by the time Presley fully raised the issue questioning the consensual nature of the QDRO in response to the motion for reconsideration filed by attorney Gross. See *Presley*, unpub op at 4-5 (finding that issues pertaining to the implication of fraud or misconduct by the absence of William's signature or evidence that he authorized his counsel to sign the QDRO were not developed or raised until Presley's response to the plaintiff's motion for reconsideration, and furthermore, the argument constituted a "red herring"). Moreover, although the record indicates that Judge Lane had received the affidavits filed by Osterbeck before deciding the motion for reconsideration, and had been provided with the controlling law, Judge Lane still denied the motion for reconsideration. We conclude, in light of Judge Lane's decisions, that it is mere speculation whether Judge Lane would have reached a favorable result if Osterbeck had provided the court

---

[4] Presley's motion to amend the QDRO briefly mentions that William did not sign the QDRO, but Presley did not develop any argument or specifically plead that William did not consent to the QDRO or that the QDRO was improperly entered in her motion to amend.

[5] A consent judgment "is a contract and is to be construed and applied as such." *Gramer v Gramer*, 207 Mich App 123, 125; 523 NW2d 861 (1994). "If the contract language is clear and unambiguous, then its meaning is a question of law for the court to decide." *Conagra, Inc v Farmers State Bank*, 237 Mich App 109, 132; 602 NW2d 390 (1999). In such cases, extrinsic evidence is not to be considered. *UAW-GM Human Resource Ctr v KSL Recreation Corp*, 228 Mich App 486, 492; 579 NW2d 411 (1998) (citation omitted).

with the supporting affidavits in her initial response to the motion to amend the QDRO. See *Pontiac Sch Dist*, 221 Mich App at 613-615 (citations omitted) (holding that the mere possibility of causation in fact is not enough and speculation or conjecture cannot support causation).

In summary, in light of Judge Lane's express rejection of *Thornton* and *Neville* as controlling of plaintiff's case, plaintiff cannot establish that she would have been initially successful in defending Presley's motion to amend the QDRO but for Osterbeck's alleged malpractice. See *Winiemko*, 444 Mich at 586. Although this Court ultimately ruled that *Neville* presented the controlling law, and reversed Judge Lane on that basis, Judge Lane rejected the applicability of *Neville* to the instant case, finding the case to be factually distinguishable. Likewise, plaintiff cannot establish that, but for Osterbeck's failure to present extrinsic evidence of William's intent at the initial hearing on the motion to amend, a different result would have occurred. See *id*. On this record, as a matter of law, plaintiff cannot demonstrate that Osterbeck's alleged negligent representation in "squander[ing] the initial opportunity for the trial court to be properly informed on both the facts and the law, and to rule correctly" proximately caused her to incur the cost of the appeal and suffer emotional distress due to the deprivation of her benefits. Because plaintiff has not established a question of fact regarding whether Osterbeck's alleged negligent representation was a cause in fact of her injuries, the trial court did not err in dismissing her complaint. In light of our conclusion on this issue, we need not address plaintiff's remaining issues concerning the elements of negligent representation and damages. See *id*. at 585-586.

Affirmed.


/s/ Kurtis T. Wilder
/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly