# STATE OF MICHIGAN

# COURT OF APPEALS

CONNIE JOUGHIN,

        Plaintiff-Appellee,

v

WILLIAM JOUGHIN,

        Defendant-Appellant.

FOR PUBLICATION
July 11, 2017
9:15 a.m.

No. 329993
Lenawee Circuit Court
Family Division
LC No. 02-025414-DM

Before: HOEKSTRA, P.J., and JANSEN and SAAD, JJ.

SAAD, J.

In this post-divorce proceeding, defendant appeals[1] the entry of a proposed qualified domestic relations order (QDRO) in favor of plaintiff, which related to her interest in $23,823 of defendant's profit sharing annuity plan (the annuity plan). For the reasons provided below, we affirm.

On April 28, 2003, the trial court entered a judgment of divorce that dissolved plaintiff and defendant's marriage. In the judgment of divorce, under the heading "PENSION, ANNUITY OR RETIREMENT BENEFITS," the trial court ordered the following:

> Plaintiff shall receive 50% of the sum of Defendant's accrued balance as of April 30, 2002, in the International Association of Bridge, Structural and Ornamental Iron Workers Local #55 Pension Plan. In addition, Plaintiff shall receive the sum of $23,823.00 from the Defendant's Iron Workers Local #55 Profit Sharing Annuity Plan and Trust. . . . The Plaintiff and Defendant shall cooperate in the execution of a Qualified Domestic Relations Order to transfer said interest to the Plaintiff. Both parties shall execute whatever documents may be necessary to complete the transfer.

---

[1] This Court granted leave to appeal in *Joughin v Joughin*, unpublished order of the Court of Appeals, entered March 24, 2016 (Docket No. 329993).

-1-

However, for reasons not apparent from the record, plaintiff and defendant did not promptly file proposed QDROs[2] to transfer interest in defendant's retirement benefits to plaintiff. Instead, plaintiff submitted proposed QDROs[3] to the trial court on June 30, 2015, approximately 12 years after the judgment of divorce was entered. On July 6, 2015, defendant filed objections to plaintiff's proposed QDROs under MCR 2.602, and in his objections, defendant argued that plaintiff's submission of the proposed QDROs was an attempt to enforce the April 28, 2003 judgment of divorce and was barred by the statute of limitations found in MCL 600.5809(3) because more than 10 years had elapsed since the trial court entered the judgment of divorce.

Plaintiff filed a response to defendant's objections on August 11, 2015, and argued that under MCL 600.5809(1), the statute of limitations to bring an action to enforce a noncontractual money obligation does not begin to run until there is a triggering event, and a claim to retirement benefits accrues when a party subject to that claim retires. Thus, she argued that, because defendant had not yet retired, her efforts to record her claim on defendant's retirement benefits had not yet accrued and, therefore, she was seeking enforcement of her claim prior to the expiration of the statute of limitations.

At the hearing on defendant's objections, defendant's counsel confirmed that defendant had not yet retired and that he had not yet received any funds from his retirement benefits. While recognizing that MCL 600.5809(3) provides for a 10-year limitations period, the trial court ultimately concluded that it would permit entry of the proposed QDROs because they had not "been reduced to the same." The trial court entered the orders on the same day.

On appeal, defendant argues that the trial court erred when it entered the proposed QDRO affecting the annuity plan because plaintiff's effort to pursue the entry was time-barred by the statute of limitations. We disagree.

Whether a "claim is statutorily time-barred is a question of law for this Court to decide de novo." *DiPonio Const Co, Inc v Rosati Masonry Co, Inc*, 246 Mich App 43, 47; 631 NW2d 59 (2001), citing *Ins Comm'r v Aageson Thibo Agency*, 226 Mich App 336, 340-341; 573 NW2d 637 (1997). We also review de novo questions of statutory interpretation. *Rock v Crocker*, 499 Mich 247, 260; 884 NW2d 227 (2016), citing *Halloran v Bhan*, 470 Mich 572, 576; 683 NW2d 129 (2004).

"Congress passed the Employee Retirement Income Security Act (ERISA) of 1974 in order to provide better protection for beneficiaries of private employee pension plans." *Roth v*

---

[2] Technically, under the Employee Retirement Income Security Act, 29 USC 1001 *et seq.*, these orders are domestic relation orders. 29 USC 1056(d)(3)(B)(*ii*). As discussed later in this opinion, they do not become *qualified* domestic relation orders, i.e., QDROs, until approved by the plan administrator. Thus, herein we will refer to domestic relation orders that have not been approved by a plan administrator as "proposed QDROs."

[3] The trial court entered a proposed QDRO as to both the annuity plan and defendant's pension; however, defendant has only appealed from the one related to the annuity plan.

*Roth*, 201 Mich App 563, 567; 506 NW2d 900 (1993) (citations omitted); see also 29 USC 1001 *et seq*. "ERISA contained an anti-alienation provision which precluded plan participants from assigning or alienating their benefits under pension plans subject to the act." *Roth*, 201 Mich App at 567. However,

> [t]he Retirement Equity Act of 1984 provides an exception to this restriction. A qualified domestic relations order (QDRO) "creates or recognizes the existence of an alternative payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under the plan . . . ." 29 USC 1056(d)(3)(B)(i)(I). Thus, a QDRO is exempted from ERISA's preemption provisions and may be used to distribute funds to a payee who was not a named beneficiary. 29 USC 1144(b)(7). [*Moore v Moore*, 266 Mich App 96, 100 n 5; 700 NW2d 414 (2005).]

Both parties contend that MCL 600.5809 provides the applicable statute of limitations in this matter. MCL 600.5809 states, in pertinent part:

> (1) A person shall not bring or maintain an action to enforce a noncontractual money obligation unless, after the claim first accrued to the person or to someone through whom he or she claims, the person commences the action within the applicable period of time prescribed by this section.
>
> * * *
>
> (3) Except as provided in subsection (4),[4] the period of limitations is 10 years for an action founded upon a judgment or decree rendered in a court of record of this state, or in a court of record of the United States or of another state of the United States, from the time of the rendition of the judgment or decree.

Plaintiff argues that her claim has not accrued because she has no right to the funds until defendant retires and he has not done so. Thus, plaintiff reasons that because her claim has not accrued, it is impossible for her action to have been brought 10 years after it accrued and the statute of limitations cannot act as a bar. Defendant, on the other hand, argues that plaintiff's claim accrued once the judgment of divorce was entered on April 28, 2003, which means that plaintiff's motion to enter the QDRO over 12 years later is time-barred.

We disagree with the parties' premise that MCL 600.5309 controls in this situation. The statute applies only to "action[s] to enforce [] noncontractual money obligation[s]." And here, we hold that the entry of the proposed QDRO is not an action to enforce a noncontractual money obligation. This Court has held that, when a judgment of divorce requires a QDRO to be entered, the QDRO is to be considered "as *part of* the divorce judgment." *Neville v Neville*, 295 Mich App 460, 467; 812 NW2d 816 (2012). Thus, because a QDRO is *part* of the judgment, it necessarily cannot be viewed as *enforcing* that same judgment. As our sister court in Tennessee

---

[4] Subsection (4) applies to child support and is not applicable here.

noted, "[T]he approval of the proposed QDRO is adjunct to the entry of the judgment of divorce and not an attempt to 'enforce' the judgment." *Jordan v Jordan*, 147 SW3d 255, 262 (Tenn App, 2004).

Additionally, to further demonstrate that the entry of the proposed QDRO is not equivalent to the enforcement of a "noncontractual money obligation," the entry of the order here did not compel the payment of any money to plaintiff. Indeed, after a court enters a proposed QDRO, as the trial court did here, the order is not enforceable until the plan administrator determines that the proposed QDRO is "qualified" under ERISA. 29 USC 1056(d)(3)(G)(*i*). As the Tennessee Court of Appeals aptly explained:

> Under ERISA, a QDRO "creates or recognizes the existence of an alternate payee's right to . . . receive all or a portion of the benefits payable with respect to a participant under a plan . . . ." 29 USC 1056(d)(3)(B)(i)(I) (1999). A proposed QDRO under ERISA, on the other hand, is "any judgment, decree, or order" entered by a trial court that "relates to the provision of . . . marital property rights to a . . . former spouse . . . , and . . . is made pursuant to a State domestic relations law . . . ." 29 USC 1056(d)(3)(B)(ii). Typically, . . . a proposed QDRO is prepared by the parties' attorneys and submitted to the trial court for approval and entry, after which, it is submitted to the administrator who administers the pension plan in question. The plan administrator must then determine if the proposed QDRO is "qualified" under ERISA. [*Jordan*, 147 SW3d at 259-260 (footnotes omitted).

Therefore, an alternate payee only becomes entitled to rights under an ERISA plan when the proposed QDRO becomes *qualified*. And a proposed QDRO becomes qualified *after it is approved by the plan administrator*. See 29 USC 1056(d)(3)(G)(*i*); *Jordan*, 147 SW3d at 260; *In re Marriage of Cray*, 18 Kan App 2d 15, 21; 846 P2d 944 (1993), rev'd in part on other grounds 254 Kan 376 (1994). Consequently, plaintiff's motion to have the trial court enter the proposed QDRO was not an act to enforce a judgment or obligation.

Instead, we hold that under these circumstances, the act to obtain entry of a proposed QDRO is a ministerial task done in conjunction with the divorce judgment itself. Indeed, the judgment established the distribution of the couple's assets and expressly requested this particular task (obtain entry of a proposed QDRO) to be accomplished. See *Duhamel v Duhamel*, 194 Misc2d 100, 101; 753 NYS2d 673 (NY Sup Ct, 2002). In its judgment of divorce, the trial court gave specific instructions to the parties to "cooperate" and "execute . . . documents" as part of an established routine in divorce cases to ultimately get a QDRO entered. Accordingly, when a party complies with the court's instructions, albeit late, as here, the party is simply engaged in supplying documents and information to the court, to comply with its ministerial obligations under the judgment—nothing more, nothing less. Though such actions ultimately will have the effect of allowing one party to share in the retirement benefits of the other, this procedure is not an enforcement of a money judgment in the sense covered by the statute. Indeed, unlike the standard enforcement case, neither party here is or has been prejudiced by the passage of time, because no party has changed any position relative to the annuity, nor has any party triggered the necessary preconditions for the application of the QDRO.

Therefore, we hold that because the entry of the proposed QDRO is not an enforcement of a noncontractual money obligation, the 10-year period of limitations provided in MCL 600.5309(3) does not apply, and plaintiff's request to have the proposed QDRO entered by the trial court was not time-barred.

Defendant, for the first time, in his reply brief on appeal, suggests that the statute of limitations of MCL 600.5309 applies because the annuity plan at issue is a "defined-contribution plan," as opposed to a "defined-benefit plan." Without supplying any authority, defendant claims that because the fund at issue is a defined-contribution plan, plaintiff could have received the funds immediately with the entry of the proposed QDRO, which makes it distinguishable from cases like *Jordan*. First, this assertion is without merit because, as we have already explained, a proposed QDRO that is entered by a trial court is not enforceable until it is approved by the plan administrator. Second, defendant provides no citation to the record[5] or other authority for his theory that plaintiff could have obtained her $23,823 immediately after the judgment of divorce was entered despite the fact that defendant had yet to retire. Indeed, 401(k)s, which defendant acknowledges are a common type of defined-contribution plan, have strict limits on when money can be disbursed without incurring substantial tax penalties. See 26 USC 72(t); IRS, *401(k) Resource Guide–Plan Participants–General Distribution Rules* <https://www.irs.gov/retirement-plans/plan-participant-employee/401k-resource-guide-plan-participants-general-distribution-rules> (accessed May 17, 2017) (stating that, generally, distributions from 401(k)s "cannot be made" unless certain conditions happen). Accordingly, defendant has failed to properly present this theory to the Court for our consideration. See *McIntosh v McIntosh*, 282 Mich App 471, 484; 768 NW2d 325 (2009); *Peterson Novelties, Inc v City of Berkley*, 259 Mich App 1, 14; 672 NW2d 351 (2003).

Affirmed. Plaintiff, as the prevailing party, may tax costs pursuant to MCR 7.219.


/s/ Henry William Saad
/s/ Joel P. Hoekstra

---

[5] Indeed, when specifically asked at oral argument if there was anything in the record to show that plaintiff could have received any of the benefits immediately after the entry of the QDRO, defense counsel conceded that there was nothing.