# STATE OF MICHIGAN

# COURT OF APPEALS

JEANINE PAULA HUDSON,

Plaintiff-Appellant,

v

BLAKE ALAN HUDSON,

Defendant-Appellee.

FOR PUBLICATION
January 7, 2016
9:05 a.m.

No. 322257
Calhoun Circuit Court
Family Division
LC No. 2013-001252-DM

Before: BOONSTRA, P.J., and SAAD and HOEKSTRA, JJ.

BOONSTRA, P.J.

Plaintiff appeals by leave granted[1] the trial court's entry of an Eligible Domestic Relations Order (EDRO) directing plaintiff's pension plan administrator, the Michigan Public Schools Employees Retirement System (MPSERS), to grant defendant an interest in her pension benefits in the form of a single life annuity payable over defendant's lifetime, and the trial court's denial of reconsideration of that order. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Plaintiff and defendant were married in November of 1999. Prior to and during the marriage, plaintiff worked as a school teacher, while defendant worked at a federal cemetery. Plaintiff filed for divorce on April 17, 2013, and she and defendant were ordered to mediation in November 2013 to address the division of property. The parties reached an agreement regarding the division of property, and that agreement was incorporated in the judgment of divorce. Relevant to this appeal, the judgment set forth the following regarding the division of their respective pensions:

> **IT IS FURTHER ORDERED AND ADJUDGED** that Plaintiff, JEANINE PAULA HUDSON, shall receive as her sole and separate property, free and clear of any claims thereto, or interest therein by Defendant, BLAKE

---

[1] *Hudson v Hudson*, unpublished order of the Court of Appeals, entered November 19, 2014 (Docket No. 322257).

ALAN HUDSON, fifty (50%) percent of the Defendant's F.E.R.S. benefits as of April 23, 2013, pursuant to a Qualifying Court Order.

\* \* \*

**IT IS FURTHER ORDERED AND ADJUDGED** that Defendant, BLAKE ALAN HUDSON, shall receive as his sole and separate property, free and clear of any claim thereto, or interest therein by Plaintiff, JEANINE PAULA HUDSON, fifty (50%) percent of 79% (*i.e.* 39.50%) of Plaintiff's M.S.E.R.S. benefits as of April 23, 2013, adjusted for gains and losses thereafter until the date of distribution, pursuant to an Eligible Domestic Relations Order.[2]

Defendant sent to plaintiff a proposed EDRO to be filed with the MPSERS. The document is a standardized form that allows the preparer to select certain options. Paragraph six of the EDRO states that "[t]he Participant assigns to the Alternate Payee a portion of the Participant's benefits from the Plan and the Plan will pay benefits to the Alternate Payee according to the following terms and conditions." Following this heading, defendant filled in a table that showed that he, as the alternate payee, would receive 39.5% of plaintiff's allowance, with the years of service included in the calculation identified as March 1, 1997 until April 23, 2013. Neither party disputes that this accurately represents the benefit granted to defendant in the judgment of divorce.

The crux of the dispute between the parties is paragraph seven of the EDRO, which lays out three options for the form of payment. The parties agree that option (c), a Joint Survivor Option, is not relevant. At issue are options (a) and (b), which state:

(a) Single Life Annuity – Payable Over Participant's Lifetime

The benefits payable to the Alternate Payee will begin when the Participant begins to receive benefits under the Plan and will be in the form of a single life annuity payable during the lifetime of the Participant. If the Participant elects to receive an early-reduced retirement benefit, the Alternate Payee's benefit shall be reduced by the same factor.

Death of Participant: If the Participant predeceases the Alternate Payee after payments to the Alternate Payee begin, all benefits payable to the Alternate Payee will permanently cease.

Death of Alternate Payee: If the Alternate Payee predeceases the Participant after payments to the Alternate Payee begin, all benefits

---

[2] The record reflects that the parties agreed to these differing percentages based on the fact that plaintiff's pension began accruing before the marriage (and a portion therefore was not marital property), while defendant's pension accrued entirely during the marriage.

payable to the Alternate Payee under this EDRO will revert to the Participant.

(b)     Single Life Annuity - Payable Over Alternate Payee's Lifetime

The benefits payable to the Alternate Payee will begin when the Participant begins to receive benefits under the Plan and will be in the form of a single life annuity payable during the lifetime of the Alternate Payee. (Note: An actuarial adjustment to the Alternate Payee's benefit will be made to reflect the difference in life expectancies.)

Death of Participant: If the participant predeceases the Alternate Payee once the Alternate Payee has begun receiving payments, benefits will continue for the Alternate Payee's lifetime.

Death of Alternate Payee: Once payment of the Alternate Payee's benefit begins, the Participant's benefit is permanently reduced and the Alternate Payee's benefit will not revert to the Participant if the Alternate Payee predeceases the Participant.

Defendant selected option (b). Plaintiff filed an objection with the trial court, arguing that defendant's selection violated the judgment of divorce. Plaintiff argued that defendant's proposed EDRO unfairly granted defendant rights in plaintiff's pension that were not available to plaintiff in defendant's pension. She asserted that because 5 CFR 838.302(b) does not allow her to obtain benefits from defendant's federal pension in the form of an annuity based on her life, defendant's proposed EDRO results in a distribution of the parties' pension plans that is contrary to the judgment of divorce, and that defendant therefore should have selected option (a). 5 CFR 838.302(b) provides

[a]ny court order directed at employee annuity that expressly provides that the former spouse's portion of the employee annuity may continue after the death of the employee or retiree, such as a court order providing that the former spouse's portion of the employee annuity will continue for the lifetime of the former spouse, is not a court order acceptable for processing.

Thus, plaintiff was prohibited by federal regulation from selecting an option comparable to option (b), i.e., an option that provides for payments from defendant's pension after his death. That federal regulation did not, however, apply to defendant relative to plaintiff's pension. Defendant responded that, according to MCL 552.101(5), he was allowed to select any option unless the option was specifically precluded by the judgment of divorce. Defendant asserted that nothing could be done about the fact that his federal plan did not allow plaintiff a comparable option, but stated that it did not preclude him from selecting option (b) in paragraph seven.

The trial court signed defendant's proposed EDRO and subsequently denied plaintiff's motion for reconsideration, reasoning in part that MCL 552.101(5) required that exclusions be spelled out in the judgment of divorce, and that was not done in the parties' judgment of divorce.

This appeal followed.

## II.  STANDARD OF REVIEW

A trial court's decision interpreting a divorce judgment and qualifying domestic relations order (QDRO) is reviewed de novo, *Neville v Neville (On Remand)*, 295 Mich App 460, 466; 812 NW2d 816 (2012), as are questions of statutory interpretation, *AFSCME v Detroit*, 468 Mich 388, 398; 662 NW2d 695 (2003).

## III.  ANALYSIS

We conclude that the trial court erred in determining that MCL 552.101(5) required that defendant be allowed to select option (b) in paragraph 7 of the EDRO.  However, the trial court's ultimate conclusion that it was bound by court rule to enforce the terms of the judgment of divorce, and that the EDRO complied with the judgment, was correct, and we therefore affirm.

MCL 552.101(5) states as follows:

> For any divorce or separate maintenance action filed on or after September 1, 2006, if a judgment of divorce or judgment of separate maintenance provides for the assignment of any rights in and to any pension, annuity, or retirement benefits, a proportionate share of all components of the pension, annuity, or retirement benefits shall be included in the assignment unless the judgment of divorce or judgment of separate maintenance expressly excludes 1 or more components.  Components include, but are not limited to, supplements, subsidies, early retirement benefits, postretirement benefit increases, surviving spouse benefits, and death benefits.  This subsection shall apply regardless of the characterization of the pension, annuity, or retirement benefit as regular retirement, early retirement, disability retirement, death benefit, or any other characterization or classification, unless the judgment of divorce or judgment of separate maintenance expressly excludes a particular characterization or classification.

The "[f]irst and foremost" rule of statutory construction that this Court follows is to "give effect to the Legislature's intent." *Tryc v Michigan Vetermans' Facility*, 451 Mich 129, 136; 545 NW2d 642 (1996).  Statutory construction begins with an examination of the language of the statute.  *AFSCME*, 468 Mich at 399.  "If the statute's language is clear and unambiguous, [this Court] assume[s] that the Legislature intended its plain meaning." *Id*.  This Court should give meaning to every word and "avoid a construction that would render any part of the statute surplusage or nugatory." *Id*.  In determining the meaning of the words used, the definition supplied by the statutory scheme controls.  *Tryc*, 451 Mich at 136.  Further, "[w]hen a statute uses a general term followed by specific examples included within the general term . . . the canon of statutory construction ejusdem generis applies." *Huggett v Dep't of Natural Resources*, 464 Mich 711, 718; 629 NW2d 915 (2001).  Pursuant to that rule of statutory construction, "the general term is restricted to include only things of the same kind, class, character, or nature as those specifically enumerated." *Id*. at 718-719.

-4-

Parsed down to its relevant language, MCL 552.101(5) states that if the judgment of divorce "provides for the assignment of any rights in and to any pension . . . a proportionate share of all components of the pension . . . shall be included in the assignment unless the judgment of divorce . . . excludes 1 or more components." In this case, the judgment of divorce clearly provides for the assignment of rights in plaintiff's pension. Therefore, defendant is also assigned "a proportionate share of all components of [plaintiff's] pension," MCL 552.101(5), unless a component has been specifically excluded. The judgment of divorce contains no exclusionary language in the paragraph that grants defendant an interest in plaintiff's pension. Rather, in affirmative language, it grants defendant a 39.5% benefit in plaintiff's pension as of April 23, 2013 "free and clear of any claim . . . by plaintiff." The dispositive question then becomes whether the right to make a selection between the options in paragraph seven is a "component[] of the pension" included in the assignment to defendant.

MCL 552.101(5) states that "[c]omponents include, but are not limited to, supplements, subsidies, early retirement benefits, postretirement benefit increases, surviving spouse benefits, and death benefits." All of the specific examples listed in the statute are separate benefits typically associated with pension plans, i.e., early retirement, surviving spouse, and death. By contrast, paragraph seven concerns the form in which all benefits will be paid, not a distinct benefit conferred by the plaintiff's plan, such as an early retirement benefit or a death benefit.[3] Therefore, the option to choose a form of payment in paragraph seven is not a "component" as that term is defined in MCL 552.101(5). See *Huggett*, 464 Mich at 718-719.

Further, MCL 552.101(5) does not simply state that all components are included. It states that "a proportionate share of all components" is included. The choice under paragraph seven is not something that can be divided proportionally. That is, defendant cannot be given 39.5% of the choice of what option to select. A decision that renders the choice of options under paragraph seven a "component" renders the words "a proportionate share of" surplusage and nugatory. *AFSCME*, 468 Mich at 399.

In sum, MCL 552.101(5) has no applicability to the question of whether defendant has the right to make an election, under paragraph seven of the EDRO, of the form of the benefits that he will receive. The trial court thus erred to the extent it based its holding on its interpretation of MCL 552.101(5).

However, the trial court also stated, in denying plaintiff's motion for reconsideration, that its holding was based on a court rule:

---

[3] For example, although defendant argued that MCL 552.101(5) grants him the option to choose either option (a) or (b) in paragraph seven of the EDRO because the choice allows him to obtain a "surviving spouse benefit," the EDRO separately indicates, in paragraph 11, that defendant will be designated as a surviving spouse for the purposes of receiving certain surviving spouse benefits. Both option (a) and option (b) are designated as "Single Life Annuities."

-5-

[T]he first [reason for ruling in favor of defendant] involves the court rule. There was a signed judgment in this case by Ms. Fekkes and her client [plaintiff] as I recall, and so we have an agreed upon judgment that was pursuant to a settlement placed on the record back on December 10th, 2013, and the judgment provided basically for the parties to divide their pensions fifty-fifty. . . . So we have a court rule in regard to what binds parties and attorneys or their signature on a signed document or what they put on the record in the courtroom. . . . The Court is simply bound by the court rule. Then it says the parties bound themselves to the judgment and then you look at the statute and the statute says what is says which involves what would be in the presumably in the judgment, and the parties just did not make those further provisions I guess if you want to put it that way. That could have been put into the judgment. They weren't.

The trial court did not explicitly identify the particular court rule upon which it based its decision. However, MCR 3.211(B) states in pertinent part:

A judgment of divorce, separate maintenance, or annulment must include . . . (2) a determination of the rights of the parties in pension, annuity, and retirement benefits, as required by MCL 552.101(4).

MCL 552.101(4) states as follows:

Each judgment of divorce or judgment of separate maintenance shall determine all rights, including any contingent rights, of the husband and wife in and to all of the following:

(a) Any vested pension, annuity, or retirement benefits.

(b) Any accumulated contributions in any pension, annuity, or retirement system.

(c) In accordance with section 18 of 1846 RS 84, MCL 552.18, any unvested pension, annuity, or retirement benefits.

The trial court stated that the parties were bound by the language of the judgment of divorce, and that the judgment of divorce did not preclude defendant's election. We agree.

The judgment of divorce should be interpreted as a court would a contract, *Laffin v Laffin*, 280 Mich App 513, 517; 760 NW2d 738 (2008), i.e., the intent of the parties should be determined from its plain and ordinary meaning. See *Alpha Capital Mgt Inc v Rentenbach*, 287 Mich App 589, 611; 792 NW2d 344 (2010).

In this case, the agreed-upon terms of the judgment of divorce, as they concern defendant's rights in plaintiff's MPSERS pension, clearly state that defendant is entitled to 39.5% of the benefits that plaintiff had accrued as of April 23, 2013, and that those benefits are to be adjusted for gains and losses until the date of distribution. The divorce judgment also explicitly states that defendant receives this benefit "as his sole and separate property, free and clear of any claim thereto, or interest therein by Plaintiff." The only other provisions of the divorce judgment that would have any bearing on this dispute is the provision that grants

plaintiff 50% of defendant's benefits as of April 23, 2013, and that she receives those benefits "as her sole and separate property, free and clear of any claims thereto, or interest therein by Defendant."

The question thus becomes whether defendant's option to choose the form of payment, combined with plaintiff's inability to select an option similar to the one chosen by defendant, renders the resulting division contrary to the party's stated intent in the judgment of divorce. We hold that it does not. The parties expressly agreed to, and the resulting judgment of divorce expressly provides for, specific mathematical divisions of the parties' benefits under their respective pension plans. The parties had an opportunity, before the judgment of divorce entered, and regardless of whether they took advantage of the opportunity, to fully explore available form of payment options under the parties' respective pension plans, to consider and address the impact, if any, of the available options and the apparently asymmetrical nature of the options available under the MPSERS plan and the FERS plan, and to make appropriate provision for the handling of the options in the settlement agreement and in the judgment of divorce. For example, the standard EDRO form applicable to plaintiff's MPSERS pension, which specifically sets forth the form of payment options at issue in this case, was available to the parties and their legal counsel before the entry of the judgment of divorce. Similarly, the impact of 5 CFR 838.302(b) on the availability of similar options under defendant's FERS plan was readily determinable by the parties and their legal counsel before the entry of the judgment of the divorce.

It was thus incumbent on the parties and their counsel to include within the judgment of divorce a determination of all rights of the parties relative to each other's pension plans, including any restrictions on the selection of options relating to the form of payment. The fact that they may have neglected or chosen not to address this issue at the time of the judgment of divorce does not afford a basis for subsequently contesting whether the selection of an option afforded by the EDRO is contrary to the terms of the judgment of divorce. It is not. Nor does it afford a basis for finding on grounds of "equity"—as plaintiff argued—"an implied term of th[e] settlement agreement" (and therefore of the resulting judgment of divorce). See *Rory v Continental Ins Co*, 473 Mich 457, 461; 703 NW2d 23 (2005) ("the judiciary is without authority to modify unambiguous contracts or rebalance the contractual equities struck by the contracting parties because fundamental principles of contract law preclude such subjective post hoc judicial determinations of 'reasonableness' as a basis upon which courts may refuse to enforce unambiguous contractual provisions."). The parties are bound by the terms of the agreed-upon judgment of divorce. See MCR 2.507(G); see also *Lentz v Lentz*, 271 Mich App 465, 472; 721 NW2d 861 (2006) ("Absent fraud, coercion, or duress, the adults in the marriage have the right and the freedom to decide what is a fair and appropriate division of the marital assets, and our courts should not rewrite such agreements.")

Affirmed.

/s/ Mark T. Boonstra
/s/ Henry William Saad
/s/ Joel P. Hoekstra