*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KENNETH GRAY,

      Plaintiff-Appellee,

v

JACQUELINE GRAY,

      Defendant-Appellant.

UNPUBLISHED
June 25, 2020

No. 344636
St. Joseph Circuit Court
LC No. 16-001081-DO

Before: O'BRIEN, P.J., and RONAYNE KRAUSE and GADOLA, JJ.

PER CURIAM.

Defendant, Jacqueline Gray, appeals by delayed leave granted the order of the trial court determining that the parties' Consent Judgment of Divorce did not award her a surviving spouse's annuity as part of her share of plaintiff Kenneth Gray's pension benefit. We affirm.

## I. FACTUAL BACKGROUND

This appeal involves the division of plaintiff's pension benefits as part of a judgment of divorce. The parties married in 1992, and in 2016 plaintiff filed for divorce. During mediation, the parties agreed to a settlement concerning the distribution of their marital property, including the division of the parties' benefits in their respective pensions. During the hearing in which the terms of the settlement were placed on the record, the parties acknowledged that plaintiff had a federal pension through his employer, but they apparently did not fully investigate or appreciate the particular benefits of the pension plan. During the hearing, the mediator remarked that defendant was "going to get the marital share of that pension . . . and any other pension benefits that [plaintiff] has . . . ." Plaintiff's counsel agreed that "whatever pension and retirement benefits [plaintiff] has for this employment that he's had during the marriage, [defendant] would be entitled to her marital share of it." Plaintiff's counsel also remarked that "if it turns out that there is some other kind of benefit associated with that pension or retirement benefit, such as a cost of living increase, or something like that, [defendant] would be entitled to her pro rata share of any and all other benefits provided by the plan associated with her marital portion of that benefit." Defendant's counsel responded that the parties did not know the specifics of plaintiff's pension, and the parties engaged in the following dialogue:

*The Court:* [Counsel], do you have anything to add to that?

[*Defendant's Counsel*]: The only—the only thing that I want to add to that is that I want to make sure that, in terms of this pension, this—this federal pension, that, basically, she gets—she's entitled to all the bells and whistles that are in that pension, her share of those. That's all I want to say. There's a lot of bells and whistles that we don't even know about, because . . .

*The Court:* You mean any—anything that would be out there for a former spouse . . .

[*Defendant's Counsel*]: We want it.

*The Court:* . . . she's entitled to, whether you've articulated it here today or not.

[*Defendant's Counsel*]: That's correct.

[*Plaintiff's Counsel*]: To the extent of her pro rata share.

[*Defendant's Counsel*]: Yes.

*The Court:* Right.

[*Plaintiff's Counsel*]: Yeah.

*The Court:* Right. Anything that the plan would permit, she's entitled to.

[*Defendant's Counsel*]: We don't have a copy of the plan. We have no idea as to what . . .

*The Court*: Right.

[*Defendant's Counsel*]: . . . the bells and whistles are.

[*Mediator*]: In fact, Your Honor, that was—may I—may I have one more say?

*The Court*: Yes, please go ahead.

[*Mediator*]: Perhaps [defendant's counsel] is not interested in this, but because of the fact that it's the Federal Government, apparently, it's very difficult for anybody to disclose information.

\* \* \*

*The Court*: Got it.

-2-

[*Mediator*]:  So we talked about—and I thought we agreed that [defendant's counsel] would be—it would be a provision of the judgment that [defendant's counsel] can prepare a letter to send to [plaintiff's counsel] for receipt by [plaintiff], who can take it to his employer with some questions that he has, or some requests for information.

Because it's our understanding that, pretty much, [plaintiff] is the only one that can get that information.  And he's talking about, for instance, a copy of the plan, so they know when [defendant] is able to take—take a pension, any other benefits that might be available.  And I think the parties have agreed to that.

[*Defendant's Counsel*]:  Thank you.

At the conclusion of the hearing, the trial court ordered the parties to submit a final order reflecting the settlement terms.  The trial court thereafter entered the Consent Judgment of Divorce stipulated to by the parties, which stated in relevant part:

## SPOUSAL SUPPORT

Beginning the first day of the month following the month in which Plaintiff receives $32,000.000 from Defendant Jacqueline Gray, spousal support in the amount of $1,000.00 per month is awarded to Defendant/Wife from Plaintiff/Husband.  The spousal support is non-modifiable in term, scope or amount, and shall terminate on the earlier of:

a) Defendant's death or remarriage; or

b) Defendant being eligible to start drawing on Plaintiff Kenneth Gray's pension and retirement benefits from his employer.

The parties hereby (1) waive and forgo their statutory right to petition the court for modification and (2) agree that the alimony provision is final, binding, and non-modifiable.  *Staple v Staple*, 241 Mich App 562, 581 (2000).  For tax purposes, spousal support is includable for Defendant and deductible for Plaintiff.

It is further Ordered and Adjudged that so long as Plaintiff/Husband's employer provides him life insurance as a benefit, and if he has an outstanding spousal support obligation to Defendant/Wife, then he shall name Defendant/Wife as the beneficiary up to the remaining amount of his spousal support obligation.  Once Plaintiff's spousal support obligation has ended, i.e. including but not limited to, upon his retirement, he shall no longer be required to list Defendant as a beneficiary.  Plaintiff will provide proof of this designation upon reasonable request.

\* \* \*

-3-

PENSION, ANNUITY AND RETIREMENT BENEFITS

Plaintiff has affirmatively represented that he maintains an interest in a Civil Service Retirement System with his employer, Logistic Information Services, BFBD, and Defendant is awarded an interest in this plan effective of April 30, 2017 to be divided by way of a coverture fraction, as follows: one half (50%) times (X) a fraction, the numerator of which fraction is 295 months [the number of months of marriage], and the denominator of the fraction being 447 months (the months of credited service time that Plaintiff has been an employee until April 2017, which is 447 months); the result of this computation is that Defendant will be entitled to .33% (thirty-three percent) [*sic*] share of the Plaintiff's Plan benefit determined as of April 30, 2017 (i.e., Plaintiff will be entitled to all of the benefits attributed to his credited service time after April 30, 2017). Defendant shall be entitled to her prorated share of any and all other ancillary benefits associated with said Plan. If Defendant predeceases Plaintiff, then her benefit is to be paid to her estate, or if none, then to the children of the parties' marriage. Plaintiff may not take a refund of employee contributions. The QDRO/EDRO shall be prepared by Defendant's attorney and Defendant shall bear all the fees and costs associated with same.

IT IS FURTHER ORDERED AND ADJUDGED that, except as otherwise stated herein, each party shall have as their sole and separate property, to hold free and clear of any right, claims, title or interest of the other, any and all benefit, right, title or interest they may have in any IRA, pension, profit sharing, annuity, employment, or retirement benefits, rights, or accounts, whether or not vested; any ownership, benefit, right, claim, title, or interest which either of the parties may now have or may have had in any pension, annuity, or retirement benefits or account and any other interest in any pension, annuity, or retirement benefits or account of the other party, including, but not limited to spouse's rights, shall be extinguished, and that the parties shall in the future hold any and all such pension, annuity, or retirement benefits or account attributable to their employment free and clear from any right, title, or interest which the other party now has or may have had therein, by virtue of being the owner, beneficiary, contingent beneficiary or otherwise.

Defendant thereafter submitted a proposed COAP,[1] that provided that defendant was to be awarded "a portion of the maximum possible Former Spouse Survivor Annuity under the CSRS,

---

[1] The parties and the trial court used the terms Court Order Acceptable for Processing (COAP) and qualified domestic relationship order (QDRO) interchangeably. As this Court has previously discussed, retirement plans must comply with the federal Employee Retirement Income Security Act (ERISA) of 1974, 29 USC 1001 *et seq.*, which precluded pension plan participants from assigning or alienating their benefits under plans that were subject to the act. *Roth v Roth*, 201 Mich App 563, 567; 506 NW2d 900 (1993), citing 29 USC 1056(d)(1) and 26 USC 401(a)(13). ERISA also contained a preemption provision, designed to establish the regulation of pension plans as an exclusively federal concern. *Roth*, 201 Mich App at 567; *Pilot Life Ins Co v Dedeaux*,

with such portion to be computed using a base amount equal to the amount of the Employee's Gross Monthly Annuity being divided between the parties. . . ." Plaintiff objected, arguing that it did not comport with the parties' settlement agreement. Plaintiff maintained that during the negotiations and after, it was specifically discussed and understood by both parties that plaintiff's pension and retirement benefit did not provide for a survivor annuity for defendant. Plaintiff argued that defendant was "attempting to charge [plaintiff] 10% off the top of his retirement benefit for [defendant] to be able to create a 'surviving former spouse annuity', which is not anything the parties agreed to, and in fact is contrary to their agreement, because it would reduce [plaintiff's] portion of his retirement benefit from 67% to 57% on his benefit accrued until April 30, 2017, and from 100% to 90% on benefit accrued after that date, and charge him with a portion of the administrative fees and costs needed to effectuate that annuity change for her benefit." Plaintiff argued that although survivor's spouse annuity benefits are "available" under plaintiff's plan, it was not elected as part of plaintiff's plan at the time of the divorce.

At the hearing on plaintiff's objection to defendant's proposed COAP, the trial court recited the parties' agreement and understanding previously set forth on the record. The trial court recognized that the parties never specifically agreed "because nobody even knew what plan [plaintiff] had at the time [they] put the settlement on the record." Plaintiff's counsel argued that the parties had exchanged information during settlement negotiations explicitly acknowledging that under federal law, survivor's spouse benefits needed to be specifically and expressly addressed. Plaintiff's counsel maintained that "a surviving spouse annuity was not a regular part of [plaintiff's] plan" and that such a benefit "would be a separate and distinct benefit," and that the parties agreed to a specific coverture fracture to proportionately distribute plaintiff's pension based on the length of the marriage in relation to the length of plaintiff's employment and history of contributing to his pension, which agreement would be frustrated if plaintiff had to forfeit additional monies to pay for the surviving spouse annuity.[2]

By contrast, defendant's counsel contended that MCL 552.101(4) governed and provided that defendant was entitled to surviving spouse benefits as a component of a pension plan unless expressly excluded by the judgment of divorce. At the conclusion of the hearing, the trial court held:

> Okay, all right. Well, no matter how many times you say it, I think it is part of any pension plan as a survivor benefit. So you can say it a dozen times that it's not. I

---

481 US 41, 46; 107 S Ct 1549; 95 L Ed 2d 39 (1987). In 1984, however, Congress enacted the Retirement Equity Act, which provided an exception to the restriction on assigning or alienating one's benefits by allowing QDROs. A QDRO " 'creates or recognizes the existence of an alternative payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under the plan . . . .' " *Moore v Moore*, 266 Mich App 96, 100 n 5; 700 NW2d 414 (2005), quoting 29 USC 1056(d)(3)(B)(*i*)(I). QDROs are thus exempt from ERISA's preemption provisions and may be used to distribute funds to a payee who is not a named beneficiary under a retirement plan. *Moore*, 266 Mich App at 100 n 5.

[2] Plaintiff's counsel also informed the trial court that plaintiff had since retired. His last payment was December 29, 2017.

think it is.  The statute indicates it is.  That doesn't resolve the question.  Getting into an argument about whether it does or doesn't really isn't the point, it's what was agreed to by the parties.

And the parties agreed to her taking a proportionate share of the pension, and until that began, he would pay her $1,000 a month as spousal support.  There is no mention in the transcript as to what would happen if he predeceased her, in terms of that.  So other than [defendant's counsel] saying he wants all the bells and whistles related to the pension plan and sending it out for the QDRO and coming back with that, I don't know.

I—I think it would have been a lot clearer, since you were all aware of the survivor benefit issue, since you had the report and other, just to say, "This does not include any survivor benefit.  It will terminate."

\* \* \*

Since [the Consent Judgment of Divorce] doesn't contemplate what would happen if she were to die before, and it doesn't contemplate what would happen if he died before, and it doesn't mention survivor benefits, I think the Judgment makes it clear that they were not contemplated.  The survivor benefits were not contemplated.

You made specific findings as to the fractions that would be used, and there's no mention in here of survivor benefits that would be obtained, so, in that sense that they were known about and not described, I'm going to find that you're bound by the Judgment that was entered.  The percentages are as they are.

And, although I think it's unfortunate that the record's not clearer, I think the Judgment of Divorce clears it up, in that you agreed to these percentages, and—and so, therefore, I'll indicate there is no issue as a survivor benefit in—contemplated in the Judgment.  It doesn't contemplate that it would continue after his death.  It contemplates that it would end at his death.

So, with that, I'll indicate that I'm going to enter the order indicating that there shall be no survivor benefit in the QDRO, and you can argue it at the next level, okay?

I agree that it would have been a lot better if you'd have put it in there.  And I don't agree with you that the assessment is that it's not part of every federal pension.  It—it's in there as part of a federal pension.  I just don't think it was contemplated by the defense, and the cost of it, and so, therefore, I'll indicate that I'm not going to order it in the QDRO.  All right.  That's the final decision.  Thank you everyone.

The trial court thereafter entered its order holding that defendant was not awarded a surviving spouse's annuity as part of plaintiff's CSRS pension benefit, and that the parties are

-6-

bound by the stipulated Consent Judgment of Divorce, and by the percentages of the pension benefit awarded as stated in the Consent Judgment. Defendant now appeals.

## II. ANALYSIS

### A. MCL 552.101(4)

Defendant first contends that she is statutorily entitled to surviving spouse annuity benefits because MCL 552.101(4) provides that surviving spouse annuity benefits are automatically included with the assignment of any rights to the opposing party's pension unless the judgment of divorce expressly states that such benefits are not included. We disagree.

We review de novo a trial court's decision interpreting a divorce judgment and a qualifying domestic relations order (QDRO), and also review de novo questions of statutory interpretation. *Hudson v Hudson*, 314 Mich App 28, 33; 885 NW2d 652 (2016). We interpret a judgment of divorce as we would a contract, determining the intent of the parties from the plain and ordinary meaning of the language used. *Id.* at 38.

MCL 552.101(4) provides:

> For any divorce or separate maintenance action filed on or after September 1, 2006, *if a judgment of divorce or judgment of separate maintenance provides for the assignment of any rights in and to any pension*, annuity, or retirement benefits, *a proportionate share of all components of the pension*, annuity, or retirement benefits *shall be included in the assignment unless the judgment of divorce or judgment of separate maintenance expressly excludes 1 or more components. Components include, but are not limited to*, supplements, subsidies, early retirement benefits, postretirement benefit increases, *surviving spouse benefits,* and death benefits. This subsection applies regardless of the characterization of the pension, annuity, or retirement benefit as regular retirement, early retirement, disability retirement, death benefit, or any other characterization or classification, unless the judgment of divorce or judgment of separate maintenance expressly excludes a particular characterization or classification. [Emphasis added.]

The parties agree that the Consent Judgment of Divorce is silent concerning an award of surviving spouse benefits. However, defendant argues that under MCL 552.101(4), any assignment of pension benefits necessarily includes all available "components" of a plan (including surviving spouse annuity benefits), regardless of whether the agreement expressly mentions them, so long as the agreement does not expressly exclude the assignment of the particular component. Defendant explains that although the Consent Judgment of Divorce did not specifically address surviving spouse benefits, under the plain language of MCL 552.101(4), because such benefits are considered "components" that "shall be included in the assignment" unless expressly excluded by the judgment of divorce, she should receive surviving spouse benefits "along with her assigned 33% interest" in plaintiff's pension.

This Court addressed the application of MCL 552.101(4) under similar circumstances in *Hudson*, 314 Mich App 28. In that case, the parties entered into a consent judgment of divorce in which they agreed to divide each party's respective pension, with the husband receiving 39.5% of

the wife's state pension, and the wife receiving 50% of the husband's federal pension. *Id*. at 30. A standardized state pension form permitted the husband to elect between a single life annuity payable over the wife's lifetime and a single life annuity payable over the husband's lifetime. *Id*. at 30-32. The husband chose the option to receive payments over his own lifetime. *Id*. at 32. The wife objected to the husband's proposed QDRO, arguing that defendant's election violated the judgment of divorce because it unfairly granted the husband rights in her pension that were not available for her in his pension. *Id*. at 32.

This Court rejected the husband's argument that MCL 552.101(4) entitled him to choose the option of a single life annuity to be paid over the course of his lifetime, determining that the annuity options in the form QDRO merely provided a mechanism of payment of the retirement benefit. The Court concluded that "the option . . . to choose the terms and conditions of payment is not a 'component' as that term is defined in MCL 552.101(5).[3]" *Id*. at 36. This Court then held that

> MCL 552.101(5) does not simply state that all components are included. It states that 'a proportionate share of all components' is included. The choice under [the QDRO] is not something that can be divided proportionally. That is, defendant cannot be given 39.5% of the choice to which he is entitled. If the choice of options under [the QDRO] constitutes a 'component,' then the words 'a proportionate share of' become surplusage and nugatory. [citation omitted]
>
> * * *
>
> In sum, MCL 552.101(5) has no applicability to the question whether defendant has the right to elect, under . . . the [QDRO], the terms and conditions of the benefits he will receive. [*Hudson*, 314 Mich App at 36.]

We are bound by this Court's holding in *Hudson*. Here, as in *Hudson*, defendant cannot be given 33% of the option (a survivor's annuity) she wishes to exercise, and the statute does not apply to the question concerning her right to elect the form of payment of the benefit she will receive under the Consent Judgment. Defendant's argument that the statute compels a determination that she is entitled to elect an annuity option as a "component" of plaintiff's pension, when the consent judgment of divorce entitled her merely to a percentage of the pension benefit, is foreclosed for the reasons this Court articulated in *Hudson*. See *id*.

## B. THE CONSENT JUDGMENT

Defendant also contends that the trial court clearly erred when it considered the parties' intent in drafting the Consent Judgment because the contractual language was unambiguous, and the unambiguous language of the Consent Judgment entitles her to elect to receive an annuity because it is an "ancillary benefit" of plaintiff's pension plan. Defendant also contends that even assuming the language of the Consent Judgment were ambiguous, the parties' intended defendant

---

[3] MCL 552.101 was amended by 2016 PA 378, effective March 22, 2017, resulting in the text of former MCL 552.101(5) now being located at MCL 552.101(4).

to have surviving spouse annuity benefits. We disagree, and conclude that the plain language of the Consent Judgment makes clear that the parties did not intend that defendant be able to take this benefit in the form of an annuity payable over her lifetime.

"A judgment of divorce should be interpreted as a court would interpret a contract, i.e., the intent of the parties should be determined from the plain and ordinary meaning of the language used." *Hudson*, 314 Mich App at 38 (citation omitted). Our primary obligation when interpreting a contract is to determine and honor the intent of the parties; we discern the parties' intent from the contractual language as a whole, according the language its plain and ordinary meaning. *Kendzierski v Macomb Co*, 503 Mich 296, 311; 931 NW2d 604 (2019). A contract is not subject to judicial interpretation unless it is ambiguous, *Rory v Continental Ins Co*, 473 Mich 457, 468; 703 NW2d 23 (2005), which occurs when provisions irreconcilably conflict or when a term is equally susceptible of more than one meaning. *Kendzierski*, 503 Mich at 311. Courts may not impose an ambiguity on clear contract language. *Grosse Pointe Park v. Mich Muni Liability & Prop Pool*, 473 Mich 188, 198; 702 NW2d 106 (2005).

In this case, the Consent Judgment does not specifically define what the parties intended when using the phrase "ancillary benefits associated with said Plan." However, the context makes clear that it did not include an annuity payable over defendant's lifetime. In its ruling from the bench, the trial court observed that the Consent Judgment makes no mention of what would happen if plaintiff predeceases defendant, such as provision for continued payments after plaintiff's death, which suggests that the parties contemplated that the benefit would terminate upon plaintiff's death. The trial court further noted that the use of a coverture fraction and the failure to specifically mention an annuity suggests that the parties did not intend to provide a survivor benefit in the form of an annuity.

There are, however, even stronger indications in the language of the Consent Judgment that the parties did not intend to include an option for an annuity payable over defendant's lifetime. Although the trial court opined that the Consent Judgment made no provision for what is to occur if defendant predeceases plaintiff, the Consent Judgment in fact states: "If Defendant predeceases Plaintiff, then her benefit is to be paid to her estate, or if none, then to the children of the parties' marriage." If the parties had contemplated a surviving spouse annuity there would have been no need for the language in the Consent Judgment providing what is to occur with defendant's benefits were she to predecease her former husband. That is, the premise of defendant's request for a surviving spouse annuity is that the benefit would be awarded not for the length of her former husband's lifetime, but instead for the duration of her lifetime. An annuity benefit of the type defendant seeks would necessarily terminate upon her death, in the normal manner of an annuity. And if an annuity had been intended as one of two or more options for appellant to choose, the language concerning appellant's early demise would have specified that it would apply only if appellant elected her coverture fraction of appellee's pension. We decline to read the Consent Judgment in the manner suggested by defendant because it would render this language surplusage or nugatory. See *Hudson*, 314 Mich App at 34.

Additionally, there is disclaimer language in the Consent Judgment that strongly suggests defendant affirmatively waived any interest in a survivor's annuity. The Consent Judgment provides:

IT IS FURTHER ORDERED AND ADJUDGED that, except as otherwise stated herein, each party shall have as their sole and separate property, to hold free and clear of any right, claims, title or interest of the other, any and all benefit, right, title or interest they may have in any IRA, pension, profit sharing, annuity, employment, or retirement benefits, rights, or accounts, whether or not vested; any ownership, benefit, right, claim, title, or interest which either of the parties may now have or may have had in any pension, annuity, or retirement benefits or account and any other interest in any pension, annuity, or retirement benefits or account of the other party, including, but not limited to spouse's rights, shall be extinguished, and that the parties shall in the future hold any and all such pension, annuity, or retirement benefits or account attributable to their employment free and clear from any right, title, or interest which the other party now has or may have had therein, by virtue of being the owner, beneficiary, contingent beneficiary or otherwise.

According to this language, unless a benefit is expressly provided for ("except as otherwise stated herein") each of the parties disclaims any interest in it. Specifically, with respect to an annuity, any interest that one of the parties may have had respecting such a benefit held by the other is "extinguished" unless expressly provided for. This language indicates that the parties knew how to address an annuity benefit. Had they intended for defendant to receive an annuity they easily could have said so; the fact they did not suggests that defendant waived her interest in such a benefit and that the Consent Judgment extinguished it.

Having concluded that the statute does not provide defendant the option of a survivor's annuity, and that the Consent Judgment makes clear that the parties intended that she receive a coverture fraction payable over plaintiff's lifetime, we affirm.


/s/ Colleen A. O'Brien
/s/ Michael F. Gadola