*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KURT J. HEIN,

        Plaintiff-Appellant,

v

TERRI JO HEIN,

        Defendant-Appellee.

FOR PUBLICATION
April 29, 2021
9:10 a.m.

No. 353272
Grand Traverse Circuit Court
LC No. 19-034834-DO

KURT J. HEIN,

        Plaintiff-Appellant,

v

TERRI JO HEIN,

        Defendant-Appellee.

No. 353285
Grand Traverse Circuit Court
LC No. 2019-034834-DO

Before: JANSEN, P.J., and RONAYNE KRAUSE and GADOLA, JJ.

RONAYNE KRAUSE, J.

In this consolidated appeal in this divorce proceeding, plaintiff, Kurt J. Hein, appeals by right and by leave granted[1] the trial court's order directing that 50% of plaintiff's federal pension annuity would be paid to defendant, Terri Jo Hein, for the entire existence of the annuity, even if defendant were to predecease plaintiff. We vacate and remand for further proceedings.

---

[1] Plaintiff apparently was uncertain whether the trial court's order was appealable by right, so he simultaneously pursued an appeal by right and an appeal by leave. Both of his appeals are substantively identical and will be treated as one and the same.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The parties were married in 1981. The parties had children, and although defendant did work part-time throughout the marriage, she was the primary caretaker of the children and generally relied on plaintiff as the family income-earner. The parties separated in 2019, by which time they had accumulated assets, but their children were no longer minors. The parties generally agreed that the immediate and direct cause of their separation was that plaintiff began a romantic relationship with another person; however, they provided differing opinions as to any underlying problems. Defendant described plaintiff as a "bully" who had "engaged in a long sneaky and deceitful extra marital affair" despite defendant being "a faithful, devoted wife." Plaintiff contended that the last decade of the marriage had been unhappy, he made efforts to improve the relationship that proved unsuccessful, and his extramarital relationship was a symptom of the marriage having already broken down due to a lack of intimacy and emotional connection. The parties agreed that defendant made about $10,000 a year and had a $400 a month pension; the parties also agreed that plaintiff was retired from federal employment, from which he had an approximately $4,000 a month pension. The parties also agreed that plaintiff had a hobby landscaping business, and plaintiff contended that he made approximately $11,000 a year from that business.[2]

The parties, each represented by counsel, nevertheless negotiated a consent agreement that, very generally, divided their assets and debts equally. Most of that division is not at issue. Relevant to this appeal, the agreement specified that defendant would be named a surviving spouse for purposes of plaintiff's federal pension, and spousal support was waived. One of the provisions stated:

> IT IS FURTHER ORDERED that Plaintiff, Kurt J. Hein's, Office of Personnel Management pension shall be divided equally between the parties pursuant to a Qualified Domestic Relations Order and Terri J. Hein, shall be considered a surviving spouse for purposes of distribution of this pension benefit.

The meaning of "divided equally" would prove contentious and underlies this appeal. Initially, however, both parties confirmed their agreement with those terms, although defendant asked for a delay in the proceedings so she could attend a medical appointment. The trial court therefore signed the consent judgment more than two months later. The parties' consent judgment of divorce was entered on October 28, 2019.

Thereafter, defendant's counsel prepared a proposed "Court Order Acceptable For Processing Federal Employees Retirement System"[3] and served it on plaintiff's counsel on January

---

[2] Defendant cited the business's "gross receivables" but cited no information about the business's profitability. It appears that other than plaintiff's pension, the parties' incomes did not greatly differ.

[3] It appears that a "court order acceptable for processing" is, essentially, a kind of qualified domestic relations order (QDRO) specifically applicable to federal pensions.

13, 2020. However, plaintiff's attorney had discontinued her representation of plaintiff by that time. According to plaintiff,

> Defendant's counsel sent a letter attaching a proposed form of qualified domestic relations order dividing the Office of Personnel Management pension (Federal Employees Retirement System) to Plaintiff's counsel. Plaintiff's counsel advised that she no longer represented Plaintiff and forwarded the communication to him the same day. Plaintiff responded later that day and requested that all communication be sent directly to him.

According to plaintiff, on January 22, 2020, he personally asked defendant's counsel to amend the proposed order in part, because he believed one of its paragraphs to be a departure from the terms of the parties' agreement and a windfall to defendant. Apparently, defendant's counsel never responded.

In relevant part, defendant's prepared Court Order Acceptable For Processing provided as follows:

> The Employee's [i.e., plaintiff] benefit has commenced.

> The Former Spouse [i.e., defendant] shall commence her benefits as soon as administratively feasible following the date this Order is approved as a COAP [Court Order Acceptable for Processing]. Payments shall continue to the Former Spouse for the remainder of the Employee's lifetime.

> However, in the event that the Former Spouse dies before the Employee, OPM [Office of Personnel Management] is directed to pay the Former Spouse's share of the Employee's FERS benefit to the Former Spouse's estate.[4]

> The Employee agrees to arrange or to execute all forms necessary for the OPM to commence payments to the Former Spouse in accordance with the terms of this Order.

On January 27, 2020, defendant's counsel filed the proposed Court Order Acceptable For Processing for entry pursuant to MCR 2.602(B)(3), the so-called "seven-day rule." Plaintiff, *in propria persona*, filed an objection to the Court Order Acceptable For Processing, explaining that the third quoted paragraph above, directing payment of defendant's half of the pension to her estate if she predeceased plaintiff, was a departure from the parties' agreement and a windfall to defendant.

---

[4] This is the paragraph at issue in this appeal, and that plaintiff argues was not agreed to in the parties' consent judgment of divorce.

The trial court held a hearing, at which plaintiff appeared still *in propria persona*, following which it signed defendant's proposed order. Plaintiff, once again represented by his trial counsel, moved for reconsideration, which the trial court denied. These appeals followed.

## II. ISSUE PRESERVATION AND STANDARD OF REVIEW

Issues are considered preserved for appellate review if they are raised in the trial court and pursued on appeal. *Peterman v Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994). Appellate consideration is not precluded merely because a party makes a more sophisticated or more fully-developed argument on appeal than was made in the trial court. See *Steward v Panek*, 251 Mich App 546, 554; 652 NW2d 232 (2002). Furthermore, plaintiff proceeded *in propria persona* during critical portions of the proceedings below; thus, his pleadings during that period are entitled to more generous and lenient construction than would be pleadings prepared by a lawyer. *Estelle v Gamble*, 429 US 97, 106; 97 S Ct 285; 50 L Ed 2d 251 (1976). Although plaintiff provides greater explication of his arguments on appeal, all of his arguments were at least generally raised in the trial court. Under the circumstances, we choose to treat plaintiff's arguments as preserved for appellate review.

A consent judgment of divorce is treated and construed as a contract between the parties. *Andrusz v Andrusz*, 320 Mich App 445, 452-453; 904 NW2d 636 (2017). Although a consent judgment gains the enforcement power of a court judgment, it remains a contract in which the parties negotiated an agreement, rather than the kind of judicial act in which the court determined the rights and obligations of the parties. *Trendell v Solomon*, 178 Mich App 365, 367-370; 443 NW2d 509 (1989); *Acorn Investment Co v Michigan Basic Property Ins Ass'n*, 495 Mich 338, 354; 852 NW2d 22 (2014). This Court reviews de novo as a question of law the proper interpretation of a contract, including a trial court's determination whether contract language is ambiguous. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 463; 663 NW2d 447 (2003). In general, a trial court's legal determinations are reviewed de novo, any underlying factual findings are reviewed for clear error, and ultimate discretionary decisions are reviewed for an abuse of that discretion. *Herald Co, Inc v Eastern Mich Univ Bd of Regents*, 475 Mich 463, 470-472; 719 NW2d 19 (2006). " '[F]ailure to exercise discretion when called on to do so constitutes an abdication and hence an abuse of discretion.' " *Rieth v Keeler*, 230 Mich App 346, 348; 583 NW2d 552 (1998), quoting *People v Stafford*, 434 Mich 125, 134 n 4; 450 NW2d 559 (1990). "A trial court necessarily abuses its discretion when it makes an error of law." *Ronnisch Constr Group, Inc v Lofts on the Nine, LLC*, 499 Mich 544, 552; 886 NW2d 113 (2016).

## III. INTENT OF THE PARTIES

As discussed, the sole issue is whether the following provision in the Court Order Acceptable For Processing is consistent with the parties' consent judgment of divorce:

> in the event that the Former Spouse dies before the Employee, OPM is directed to pay the Former Spouse's share of the Employee's FERS benefit to the Former Spouse's estate.

The relevant portion of the consent judgment of divorce provides:

-4-

that Plaintiff, Kurt J. Hein's, Office of Personnel Management pension shall be divided equally between the parties pursuant to a Qualified Domestic Relations Order and Terri J. Hein, shall be considered a surviving spouse for purposes of distribution of this pension benefit.

Thus, resolution of this issue turns largely on what "divided equally" meant to the parties when they signed their agreement.

Plaintiff first argues that the trial court's construction of the judgment of divorce is facially erroneous. He points out that if he predeceases defendant, his pension will terminate and nothing further would be paid into his estate. Conversely, as a "surviving spouse," defendant would continue to receive her own independent survivor annuity. He therefore contends that defendant (or her estate) would receive a windfall with no commensurate benefit to plaintiff, which conflicts with the judgment of divorce's overall scheme of dividing the parties' debts and assets equally. In other words, "defendant's share" should be understood to mean half of plaintiff's pension during her lifetime and her survivor benefit if she outlives plaintiff.

Plaintiff significantly relies on the procedures set forth in 5 CFR § 838.101 *et seq*. Those provisions generally "regulate[] the Office of Personnel Management's [(OPM)] handling of court orders affecting the Civil Service Retirement System (CSRS) or the Federal Employees Retirement System (FERS), both of which are administered by the Office of Personnel Management (OPM)." 5 CFR § 838.101. Subpart B "regulates the procedures that the Office of Personnel Management will follow upon the receipt of claims arising out of State court orders directed at employee annuities . . ." 5 CFR § 838.201(a). Pursuant to 5 CFR 838.103,

> *Former spouse* means (1) in connection with a court order affecting an employee annuity or a refund of employee contributions, a living person whose marriage to an employee has been subject to a divorce, annulment of marriage, or legal separation resulting in a court order, or (2) in connection with a court order awarding a former spouse survivor annuity, a living person who was married for at least 9 months to an employee or retiree who performed at least 18 months of civilian service covered by CSRS or who performed at least 18 months of civilian service creditable under FERS, and whose marriage to the employee of retiree was terminated prior to the death of the employee or retiree.

> *Former spouse survivor annuity* means a recurring benefit under CSRS or FERS, or the basic employee death benefit under FERS as described in part 843 of this chapter, that is payable to a former spouse after the employee's or retiree's death.

In other words, 5 CFR § 838 generally controls how the relevant federal administrative agencies handle state domestic relations orders affecting federal pensions.

Although not a model of clear drafting, 5 CFR § 838.302(b) states that a court order acceptable for processing may not provide for any portion of the employee or retiree's pension to be paid to a former spouse after the death of the employee or retiree. Similarly, 5 CFR § 838.222(b) provides "that OPM can only honor court orders dividing employee annuities during

the lifetime of the retiree or phased retiree." Additionally, 5 CFR § 838.803(b) also indicates that benefits will not be paid beyond the lifetime of the employee or retiree. Therefore, plaintiff appears to be correct in asserting that his pension will terminate upon his death, so nothing would be paid into his estate. A necessary corollary is that unless defendant was named a surviving former spouse, she would also receive nothing after plaintiff's death if he predeceased her.

Pursuant to 5 CFR § 838.804, the former spouse survivor annuity must be explicitly directed in a court order acceptable for processing. Defendant's Court Order Acceptable For Processing includes a provision for awarding a former spouse survivor annuity, to which plaintiff does not object. Thus, plaintiff appears to be correct in asserting that defendant will receive a survivor annuity if plaintiff predeceases her. Furthermore, defendant would receive that survivor annuity irrespective of any other division of plaintiff's pension benefits, although receipt of the survivor annuity would be strictly contingent upon outliving plaintiff.

More directly affecting this matter, 5 CFR § 838.237 provides in full:

(a) Unless the court order acceptable for processing expressly provides otherwise, the former spouse's share of an employee annuity terminates on the last day of the month immediately preceding the death of the former spouse, and the former spouse's share of employee annuity reverts to the retiree or phased retiree.

(b) Except as otherwise provided in this subpart, OPM will honor a court order acceptable for processing or an amended court order acceptable for processing that directs OPM to pay, after the death of the former spouse, the former spouse's share of the employee annuity to—

(1) The court;

(2) An officer of the court acting as fiduciary;

(3) The estate of the former spouse; or

(4) One or more of the retiree's or phased retiree's children as defined in 5 U.S.C. 8342(c) or 8424(d).

Consequently, plaintiff is also correct in asserting that *by default*, defendant's half of his pension would revert to him upon defendant's death, in the event he predeceases her. Continuing to divide the pension after defendant's death is not forbidden; it only must be explicitly specified. Nevertheless, we are persuaded that plaintiff would have reasonably expected that his pension annuity would be divided only for defendant's lifetime, rather than for his own lifetime, unless expressly stated otherwise.[5]

---

[5] We note that the trial court asked plaintiff, "why do you think you get it back?" This appears to reflect a misapprehension of the default procedures described above.

However, that does not end the analysis. Defendant and the trial court relied on MCL 552.101(4), which provides:

> For any divorce or separate maintenance action filed on or after September 1, 2006, if a judgment of divorce or judgment of separate maintenance provides for the assignment of any rights in and to any pension, annuity, or retirement benefits, a proportionate share of all components of the pension, annuity, or retirement benefits shall be included in the assignment unless the judgment of divorce or judgment of separate maintenance expressly excludes 1 or more components. Components include, but are not limited to, supplements, subsidies, early retirement benefits, postretirement benefit increases, surviving spouse benefits, and death benefits. This subsection applies regardless of the characterization of the pension, annuity, or retirement benefit as regular retirement, early retirement, disability retirement, death benefit, or any other characterization or classification, unless the judgment of divorce or judgment of separate maintenance expressly excludes a particular characterization or classification.

In principle, an assignment of half of a pension therefore includes half of all components of that pension. See *Hudson v Hudson*, 314 Mich App 28, 34-36; 885 NW2d 652 (2016).[6] Importantly, however, MCL 552.101(4) does not mean "that all components are included," and indeed, it excludes provisions that cannot be proportionally divided. *Hudson*, 314 Mich App at 36. For example, MCL 552.101(4) expressly provides that "surviving spouse benefits" are "components" of a pension. However, the former spouse survivor annuity here is simply incapable of division: it is a contingent right that definitionally belongs only to defendant and may never pay anything.

As discussed, plaintiff's pension annuity would terminate upon his death, and defendant's survivor annuity would terminate upon her death. By plaintiff's construction, neither party would have anything paid into their estates and neither party would be inconvenienced during their lifetimes; whereas by defendant's construction, only she would have anything paid into her estate, at plaintiff's continued expense. The intent of the federal pension scheme appears to be to make payments only for the lifetimes of the retirees or spouses. Thus, there seems to be something unbalanced about a division under which one party might continue to receive payments after death, whereas the other party could not. As noted, it would be reasonable to expect "default" procedures in 5 CFR § 838 to be followed in the absence of an expressly negotiated agreement to the contrary. Nevertheless, the pension annuity is clearly a "component" of the pension and is capable of proportionate division. Thus, it also would be reasonable for defendant to have expected that under MCL 552.101(4), she would continue receiving half of that pension annuity for the entirety of the existence of that pension; again, unless specifically provided otherwise.

We disagree with plaintiff that there is a federal supremacy issue in this matter. Both 5 CFR § 838.101 and MCL 552.101(4) create default procedures, but both also permit departures from those defaults. The outcome of this matter turns instead on contract interpretation, which requires the courts to determine the intent of the parties. Based on 5 CFR § 838.101 and MCL

---

[6] When *Hudson* was decided, current MCL 552.101(4) was located at MCL 552.101(5). It was renumbered (and one non-substantive word was changed) to its current position by 2016 PA 378.

52.101(4), both parties had good reason to assume that "divided equally" would, in the absence of further specification, support their own construction of how to divide the pension after defendant's death. Furthermore, both constructions are arguably the "fairer" one. Plaintiff's construction appears more consistent with the intent of the federal pension scheme, would cause no inconvenience to defendant during her lifetime, and is "equal" in the sense that neither party would receive payments into their respective estates. Defendant's construction appears more consistent with the strict letter of MCL 552.101(4) and is "equal" in the sense that the only divisible component of plaintiff's pension would be divided in half with no further complexity.

Under the circumstances, it is ambiguous what "*divided equally*" was intended to mean. Both parties have a fair, plausible, and reasonable basis for expecting their construction to prevail in the absence of an express statement to the contrary. In other words, the provision in the consent judgment of divorce that the pension should be "divided equally" is susceptible to multiple reasonable meanings. Consequently, it is ambiguous. See *Kendzierski v Macomb Co*, 503 Mich 296, 311-312, 317; 931 NW2d 604 (2019). Therefore, whether the Court Order Acceptable For Processing comports with the intent of the parties in the consent judgment is not facially apparent.

Strictly speaking, the trial court is not obligated to conduct an evidentiary hearing to resolve an ambiguity in a consent judgment of divorce unless a party expressly asks for such a hearing; however, a party has a right to such a hearing upon request. See *Mitchell v Mitchell*, 198 Mich App 393, 397-399; 499 NW2d 386 (1993). Here, plaintiff, *in propria persona,* requested "a hearing to [sic] my objection as soon as practicable." Although this is not a clear request for an *evidentiary* hearing, it is important to note that plaintiff was not represented by counsel at the time, and therefore his objection is entitled to more lenity and generosity in construction than if it had been prepared by a lawyer. *Estelle*, 429 US at 106. A fair reading of the remainder of plaintiff's objection is that he did not agree to anything that would support defendant's proposed Court Order Acceptable For Processing. Under the circumstances, including plaintiff's lack of counsel, the trial court's clear misapprehension of plaintiff's argument, and the readily-apparent factual confusion during the hearing on plaintiff's objection, we deem plaintiff to have (albeit inartfully) requested an evidentiary hearing.

## IV. SEVEN-DAY RULE

Equally critically, the trial court committed a clear procedural error that would require vacation of the Court Order Acceptable For Processing in any event. The aptly named "seven-day rule," MCR 2.602(B)(3), provides, in relevant part:

> An order or judgment shall be entered by one of the following methods . . . Within 7 days after the granting of the judgment or order, or later if the court allows, a party may serve a copy of the proposed judgment or order on the other parties, with a notice to them that it will be submitted to the court for signing if no written objections to its accuracy or completeness are filed with the court clerk within 7 days after service of the notice. [MCR 2.602(B)(3).]

The rule only comes into effect after the trial court actually grants a judgment. *Hessel v Hessel*, 168 Mich App 390, 396; 424 NW2d 59 (1988). Its plain terms provide that it is a mechanism for the entry of an order or judgment reflecting a decision made by the trial court. Thus, it is

definitionally not a mechanism for entering a consent judgment, nor can it be a mechanism for entering an order that is not an effectuation of a trial court's ruling. See *Jones v Jones*, 320 Mich App 248, 261 n 5; 905 NW2d 475 (2017). To the extent the trial court made a decision, it was that defendant's Court Order Acceptable For Processing comported with the parties' consent judgment of divorce. Thus, the "seven-day rule" could not have come into effect until seven days after that.

## V. CONCLUSION

The trial court erred in two ways, either of which would mandate vacation by itself. First, the trial court should have held an evidentiary hearing to determine the intent and understanding of the parties regarding the meaning of "divided equally" in the consent judgment. Secondly, the trial court should not have entered the Court Order Acceptable For Processing pursuant to MCR 2.603(B)(3). For both reasons or for either reason, the trial court's entry of the Court Order Acceptable For Processing is vacated. Unless the parties agree to the terms of a substitute order, or otherwise obviate the need, the trial court must hold an evidentiary hearing that includes testimony from the parties, and on that basis, make a factual determination and enter a judgment as to what the parties intended to happen to plaintiff's pension if he outlives defendant.

Vacated and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Amy Ronayne Krause
/s/ Kathleen Jansen
/s/ Michael F. Gadola

-9-